HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS, ET AL v. .J. H. PETERS AND Elizabeth Peters

5-4418      425 S. W. 2d 720

Opinion delivered April 1, 1968

*Spitzberg, Bonner, Mitchell & Hays* and *Smith, Williams, Friday & Bowen*; by *Michael G. Thompson,* for appellants.

*U. A. Gentry, S. Hubert Mayes Jr.* and *Charles Mott Jr.,* for appellees.

PAUL WARD, Justice. This is an appeal from a chancery decree which held two grantors mentally incapable of executing a deed. Other issues are also raised. The background facts set out below are not in dispute.

*Facts.* On October 27, 1961 J. H. Peters and his sister executed a deed to J. S. Kirkpatrick and his wife conveying to them a house and lot at 1408 Bishop Street in Little Rock. The purchase price was $4,000, of which $2,000 was paid in cash and the balance in monthly installments secured by a vendor's lien. The Kirkpatricks substantially improved the property and then went into possession.

On September 22, 1964 the Kirkpatricks conveyed, by deed, the property to Housing Authority of Little Rock for $10,000, less the amount due the Peterses. When the Authority offered to pay the Peterses they refused to accept the money and satisfy the lien.

When the Authority filed suit to remove the lien on the property held by the Peterses they alleged that at the time they executed the deed to Mr. and Mrs. Kirkpatrick they were of unsound mind and incapable of doing so. Thereupon the court appointed Murt J. Donahue guardian ad litem for Elizabeth Peters and Mrs. E. J. Epps as guardian ad litem for J. H. Peters.

The issues of mental incapacity were presented to the Chancellor who held both Elizabeth and J. H. Peters were incompetent to execute the deed to Mr. and Mrs. Kirkpatrick, and canceled the same. Numerous other issues were also raised at the trial and decided by the court, but these issues need not be discussed since we have concluded the trial court erred in canceling the

deed in question. The decisive issue therefore is whether the court's finding of incompetency is supported by the weight of the evidence.

The rule for testing the mentality required of a person before he can execute a valid deed, in the absence of fraud, duress or undue influence, has been well established by many decisions of this Court. In *Pledger* v. *Birkhead,* 156 Ark. 443 (p. 455) 246 S. W. 510, there appears the following statement:

> "If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument."

The exact statement copied above was approved in *Petree* v. *Petree,* 211 Ark. 654, 201 S. W. 2d 1009. In *Donaldson* v. *Johnson,* 235 Ark. 348, 359 S. W. 2d 310, a Mrs. Donaldson, 81 years old and suffering from "diabetes, arteriosclerosis, leukemia, secondary uremia and other diseases of old age", executed a deed to her daughter for "$1.00 and other valuable consideration", and then died nine days later. A son sued to cancel the deed on the grounds that the daughter "exercised undue influence on Mrs. Donaldson to secure the deed and also that Mrs. Donaldson was incompetent to execute the deed". This Court in rejecting the above grounds, stated:

> "The proof before the chancellor fails to show undue influence or lack of mental capacity *at the time the deed was executed."* (Emphasis added.)

In the case here under consideration we think the weight of evidence does support a finding that Elizabeth and J. H. Peters did have sufficient capacity to retain in their memory, without prompting, the extent and

condition of their property, to whom it was conveyed, and for what consideration *at the time* of the conveyance. Since practically all the testimony pertained to the mental incapacity of Elizabeth, we will examine only that part of the testimony.

Elizabeth and her brother, J. H., lived on the property for many years; they dealt with a realtor in selling to the Kirkpatricks; they refused two previous offers before accepting $4,000 on October 27, 1961. Then they purchased a home in the country where they desired to live. After the Kirkpatricks had made substantial improvements they sold to the Housing Authority for $10,000. The extent of the improvements is not revealed. It was established that Elizabeth's actions were peculiar or unusual in that neighbors heard her make loud noises and often saw her scantily dressed— probably the result of drinking to excess. The essence of the testimony offered to show Elizabeth's incapacity to execute the deed is set out below.

A Mrs. Mayes, who knew her in 1960, said she was some times incoherent, didn't go to church, but was normal at times, and she knew nothing about her condition when the deed was made. Mrs. Nally knew her for twenty-seven years, but not since 1959, and knew nothing about her capacity when the deed was made. Mrs. Myers knew her but hadn't seen her since 1955. Her guardian ad litem knew nothing about her from the year 1951 until after the sale was made. Dr. Elizabeth Fletcher, who saw her briefly in 1953, wrote a letter in 1958 having her committed to the State Hospital for a short time. The doctor was not positive that she actually saw her at that time. Dr. McMillan interviewed her at the time the deed was made when she applied to the welfare department for a job, and didn't think she was suited for gainful employment. He didn't have any record pertaining to mental incapacity, and he was not a psychiatrist.

On the other hand, five or six witnesses testified Elizabeth was at times normal and mentally competent, and that she fully understood all about the transaction with the Kirkpatricks. Moreover, at the time of the negotiation when the question of her mental capacity was raised, interested parties arranged for a hearing in Probate Court before Paul X. Williams (then a chancery judge on exchange) who pronounced her mentally competent.

We therefore hold that, under legal rules previously mentioned, the weight of the testimony does not support the finding Elizabeth Peters and J. H. Peters were not, at the time the deed was executed, mentally competent. In view of this conclusion it is not necessary to decide the other issues raised on appeal.

The decree of the trial court is reversed, but it will have jurisdiction to take further necessary action consistent with this opinion.

BROWN, J., concurs.

BYRD, J., disqualified.

LYLE BROWN, Justice, concurring. I would decide this suit on the point of law raised by the Housing Authority. Its contention is that, as a bona fide purchaser of the property from the grantees of incompetents who have not been so adjudicated, its title should be protected. That position is the better rule of property law and is the rule in most jurisdictions. *Goldberg* v. *McCord*, 251 N. Y. 28, 166 N. E. 793 (1929); *Brown* v. *Khoury*, 346 Mich. 97, 77 N. W. 2d 336 (1956); and *Christian* v. *Waialua Agriculture Co.*, 33 Haw. 34 (1934). The cited cases are based on case law, not statutes. There are numerous holdings to the same effect in Kentucky but they are backed by statute.

Since our rule on this point appears unsettled, and since we have no holdings to the contrary, that rule

should be adopted. To hold otherwise, or not to rule on the point at all, will result in uncertainty of titles. Moreover, a remote grantee could be forced to defend his title against the alleged incapacity of anyone of a long line of grantors.