Gene HOWARD and Lillian HOWARD *v.* John G.
GLAZE, Administrator of the Estate of Chloe Sheffield,
Deceased, and Bill FLATTE

86-227                                          727 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered April 20, 1987

*Trafford & Bray*, by: *Winfred A. Trafford* and *C. Norton Bray*, for appellants.

*Tapp Law Offices*, by: *J. Sky Tapp*, for appellees.

DAVID NEWBERN, Justice. This appeal results from the chancellor's decision that a deed from Chloe Sheffield to the appellants, Gene and Lillian Howard, should be set aside. The action was brought by the appellees who are the brother of the now-deceased Chloe Sheffield and the administrator of her estate.

The appellees contended that Mrs. Sheffield was incompetent at the time she made the deed and that she was subjected to undue influence by the appellants.

The appellants have stated only one point for appeal: The chancellor's decision was clearly against the preponderance of the evidence. In his letter opinion, the chancellor did not state directly that he was finding incompetency or undue influence. He referred to a number of irregularities on the face of the instrument as well as factors which might have borne upon the motives of the appellants who arranged the execution of the deed. His opinion continued, in pertinent part:

> Each side has presented their case and . . . seems to prove their case. However, when all of the evidence is considered Mrs. Sheffield's age, situation, and the location and manner of preparation of the deed, the addition of information to the deed, I am convinced that the deed should fall. I'm not satisfied that Mrs. Sheffield was fully and completely exercising her own will and control. Deeds that are executed in the manner of this one, in my opinion, on the very face are suspect.

While he did not say so precisely, we find the chancellor's opinion sufficient to permit us to conclude he held the deed was invalid because of undue influence, incompetency of the grantor, or both. The evidence and the chancellor's opinion also raise an issue as to the effect of the alteration of a deed after it has been delivered. We hold that the conclusion that there was undue influence or incompetency was not justified by the evidence presented, and we hold that the alteration of the deed was not the sort which required it to be set aside, thus we reverse.

### 1. Incompetency and undue influence

Chloe Sheffield was a twice-widowed lady who had accumulated considerable property in the form of a residence, land, cattle, and cash. The appellants, Gene and Lillian Howard, are distant relatives of the late Mr. Sheffield, Mrs. Sheffield's second husband. Appellee John Glaze, a nephew of Mrs. Sheffield, testified that when she died in October, 1983, he became aware of the deed in question. It did not "look right" to him, so he brought this action to have it set aside, alleging incompetency on the part

of the grantor and undue influence on the part of the appellants.

It is undisputed that in August of 1983 Mrs. Sheffield called the appellants and asked them to come to get her because she was unable to care for herself. The appellants moved her into their home where, with the exception of two periods when Mrs. Sheffield was hospitalized, they cared for her until her death in October, 1983. The deed which is the subject of this litigation was allegedly executed while Mrs. Sheffield was hospitalized in Little Rock and undergoing chemotherapy treatment in August, 1983.

The evidence of the appellants showed that they had made an agreement with Mrs. Sheffield for a "support deed." That is, she agreed to deed property to them in exchange for their agreement to support her and care for her for the remainder of her life. The evidence of the appellees did not contradict that conclusion, however, but tended to show that the agreement was that the appellants would live with Mrs. Sheffield at her home in Mount Ida rather than take her into their home in Pine Bluff. As it turned out, Mrs. Sheffield called the appellants to fetch her from Mount Ida to their home in Pine Bluff when she became too ill to care for herself, and although the parties contemplated that they would all move back to her property in Mount Ida, she died unexpectedly before their plan could go into effect. The evidence showed the appellants had begun moving to Mount Ida before Mrs. Sheffield died.

The appellants make a strong argument that the appellees have presented no evidence which would justify the chancellor's conclusion with respect to either incompetency or undue influence. Both the abstract and the record support the appellants' claim. While the brief for the appellees makes references to testimony showing irregularities in the deed and incidents from which it could have concluded the motives of appellant Gene Howard may have been impure, nothing shows either incompetency or undue influence.

The only testimony tending to show incompetency was given by Mrs. Sheffield's sister, Ollie Busby, who said that after Mrs. Sheffield began chemotherapy treatments she told Mrs. Busby she did not "feel human" and that her head was "not right." Others testified that Mrs. Sheffield's illness caused her great pain, but no witness said that she was not alert and cognizant of her

surroundings except for the day or so before her death, a time not relevant here. Mrs. Sheffield's treating oncologist executed an affidavit to the effect that it was his opinion that Mrs. Sheffield was competent to make a deed on August 6, 1983. In his deposition, which was admitted into evidence, he was questioned closely by the appellees' counsel about the affidavit, and he refused to recant it.

In *Housing Authority of the City of Little Rock* v. *Peters*, 244 Ark. 478, 425 S.W.2d 720 (1968), this court reversed a chancellor's holding that a deed had been the result of incompetency because the weight of the evidence supported a finding that the grantors did have the capacity to make the deed. That is our holding here. As far as we know, no request was made of the chancellor that he enter separate findings of fact and law. *See* Ark. R. Civ. P. 52(a). In this instance we are not constrained by the requirement of Rule 52(a) that a chancellor's factual findings be overturned only on the determination that they are clearly erroneous. We find no fault with the chancellor's factual conclusions, so far as we can determine them from his opinion and order. Rather, we are simply unable to find, in the record before us, factual support for the result he reached.

Lack of competency to make a deed and undue influence are often closely related, and the evidence of one may be relevant to the evidence presented to the other. Thus, we review such allegations together. *Rose* v. *Dunn*, 284 Ark. 42, 697 S.W.2d 180 (1984). As noted above, the appellees refer us to considerable evidence which was sufficient to raise the suspicion of the chancellor as to the impurity of the appellants' motives, particularly their motives in assuring that they came into the property of Mrs. Sheffield when it became apparent to all that her illness was quite serious. However, we cannot find any evidence that they said or did anything to put Mrs. Sheffield in a position of fear or that they committed any fraud upon her or overreached her or coerced her in any way.

## 2. Deed alteration

Mr. Mullenix, a Montgomery County abstractor, was the scrivener who prepared the deed. His testimony was that Mrs. Sheffield called him and asked him to prepare the deed from her to the appellants. He testified that the deed, as initially drafted by

him, retained a life estate in Mrs. Sheffield. That testimony was contradicted by appellant Gene Howard who testified that he returned the deed to Mr. Mullenix, after it had been executed by Mrs. Sheffield, for the addition of the language retaining the life estate. Without the life estate reservation, the conveyance to the appellants would have been in fee simple absolute. Thus, the testimony of appellant Gene Howard was contradictory of that of Mr. Mullenix, but contradictory in a manner unfavorable to the appellants, given the appellees' contention that any alteration of a deed invalidates it.

The appellees' contention, that the deed was thus altogether void, is based upon *Inglish* v. *Brenemen*, 5 Ark. 377 (1844), in which this court held that the alteration of a promissory note by the insertion by the payee of a date which had the effect of accelerating the due date invalidated the note. While this court made it clear that any such insertion, absent authority from the payee to make it, would invalidate the note, it was also stated that such an alteration "without the consent" of the payor would vitiate the instrument. The opinion thus concluded that when the payee made the insertion in the note, it became incumbent upon him to show by what authority he did so. That is a far cry from holding that any alteration, no matter what it might be and no matter by whom it was made or under what circumstances, vitiates an instrument as the appellees suggest.

Nor is the case of *Perry* v. *Perry*, 234 Ark. 1066, 356 S.W.2d 419 (1962), also cited by the appellees, helpful to their position. There, J.C. Perry and his wife Mabel Perry purchased land for $1,100, using $900 which belonged to their son. The deed showed the elder Perrys as grantees. When their son, Charles, returned home from the service, Mrs. Perry gave him the deed. He had it altered to show that he was the grantee, and then he recorded it. J.C. and Mabel later separated, and Charles conveyed the land to Mabel who then sought to eject J.C. We held that the alteration of the deed by Charles was of no effect other than a mere spoliation of the deed. We quoted Tiffany on Real Property, 3rd Ed., Vol. 4, page 43, as follows: "The substitution of another name as that of the grantee, without the grantor's consent, can obviously not operate to vest title in the person whose name is substituted." We thus held that despite the alteration the deed was valid, and we would not permit one of the grantees, J.C., to be ejected from the

land. The invalidity of the attempted alteration was again, as in *Inglish* v. *Brenemen*, *supra*, conditioned upon the lack of consent of the original parties to the instrument.

III *American Law of Property*, § 12.85 (1974), recognizes that the early common law, following *Pigot's Case*, 11 Coke 26b, 27a, 77 Eng. Rep. 1177 (1696), was that any alteration of a deed after execution and delivery rendered the instrument void. The treatise then discusses the many exceptions to that rule but remains somewhat equivocal as to the effect of a "material alteration" under circumstances such as those in this case. We are, however, not troubled here by the early common law rule. We have held that alteration by interlineations purporting to add to the description additional land in a handwritten deed did not affect the original conveyance. *Faulkner* v. *Feazel*, 113 Ark. 289, 168 S.W. 568 (1914). It would make no sense to hold that a grantee, by altering a deed, could effect a reconveyance to his grantor and thus avoid all the formalities of conveyancing designed to protect the parties to a deed and third persons. Although we need express no opinion on the validity of the attempted reservation of a life estate, we hold the deed was not altogether invalidated by it.

Reversed.