Timothy C. SANDUSKY and Rose M. Sandusky *v.* FIRST NATIONAL BANK of Sikeston

88-310                                          773 S.W.2d 95

Supreme Court of Arkansas
Opinion delivered July 10, 1989

*Fendler, Gibson & Bearden,* by: *Mike Bearden,* for appellant.

*Wilson & Associates, P.A.,* by: *Jack T. Lassiter,* for appellee.

ROBERT H. DUDLEY, Justice. The creditor bank, appellee, negligently failed to secure federal mortgage insurance protection on its loans to appellants. Upon default and foreclosure the chancellor granted a deficiency judgment against appellants. The appellants contend that the bank's negligent failure to secure mortgage insurance should have excused them from the deficiency judgment. The chancellor ruled correctly, and, accordingly, we affirm.

The appellants, Timothy and Rose Sandusky, obtained four (4) loans from the appellee, First National Bank of Sikeston, Missouri. The loans were secured by mortgages on real estate in Arkansas. The bank anticipated selling the notes and mortgages in secondary markets, and, in order to do so, intended to obtain mortgage insurance payment certificates from the Federal Housing Administration. These certificates would have guaranteed payment of the mortgages in the event of default. As part of the

loan transaction the appellants were charged premiums for the federal mortgage insurance certificates. Borrowers routinely pay mortgage insurance premiums which are collected by lenders and then submitted to the F.H.A. These premiums then go into insurance funds which are used to cover losses on insured defaulted loans.

The issuance of an F.H.A. mortgage insurance certificate is a contract between F.H.A. and the lender. Thus, it is the lender, not the borrower, who makes the application. 12 U.S.C. § 1709(a) (1980). The lender in this case, appellee, was negligent in its loan processing and, as a direct result, did not obtain mortgage insurance on three (3) of the loans in question. Appellee subsequently sold all four (4) loans to another financial institution. Appellants then defaulted. Because appellee had failed to obtain the mortgage insurance, it was required to repurchase the three (3) loans.

Appellee filed suit for foreclosure on the three (3) mortgages and, after sale of the real estate, sought a deficiency judgment against the appellants. The chancellor found that the failure to secure mortgage insurance was due to the bank's negligence, but awarded the deficiency judgment after giving appellants credit for the insurance premiums.

Appellants' first point of appeal is that the chancellor erred in entering a deficiency judgment. The argument is without merit.

■ Although the appellee bank was clearly negligent, that negligence damaged only the appellee bank. Instead of collecting the deficiency under a policy of insurance, the appellee, because of its negligence, has only a deficiency judgment, which may or may not be collectible. On the other hand, the appellants have not been damaged by the bank's negligence. They owe the same unpaid balance on the note and face the same cause of action, no matter who the creditor is. If the mortgage insurance had been purchased, the appellants would have owed F.H.A. and faced foreclosure and a deficiency judgment because of the right of subrogation set out in 12 U.S.C. § 1710(a) (1980). Since the mortgage insurance was not purchased, they owe the appellee bank and are subject to the deficiency judgment in its favor. They simply have not been damaged. The chancellor gave them credit

for the premiums which they paid.

■ Appellants argue that the appellee should be estopped from obtaining the deficiency judgment. In *Padgett* v. *Haston,* 279 Ark. 367, 651 S.W.2d 460 (1983), we reiterated the doctrine of estoppel as follows:

> Four elements are necessary: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel had a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Here, neither the second nor the fourth elements of estoppel were present. There was no reliance or altered conduct by the appellants because of the payment of the mortgage insurance premiums. Next, the appellants were not injured by reliance on the appellee's conduct.

■ For the same reason, appellants' argument involving the doctrine of unclean hands must fail. A party must prove that he was injured in order for the unclean hands doctrine to apply. *Batesville Truck Line, Inc.* v. *Martin,* 219 Ark. 603, 243 S.W.2d 729 (1951). The rationale of the doctrine is to secure justice and equity and not to aid one in an effort to acquire property to which he has no right.

■ The appellants next argue that they are entitled to a set-off of the amount of money which would have been paid by the mortgage insurance. This argument is also without merit. Since the appellants would not have been the payees under a certificate of mortgage insurance, and since no benefit would have accrued to them had the insurance been paid, they did not prove any damages or the entitlement to a set-off of the amount of insurance. They were entitled to a set-off of the premiums, and the court awarded that relief.

■ The appellants next argue that the trial court erred in refusing to award damages to them for conversion of the insurance premiums. We need not deal with the issue of whether a conversion occurred because, even if it did, the proper measure of damages is the market value of the property at the time and place of the conversion. *Burdan* v. *Walton,* 286 Ark. 98, 689 S.W.2d

543 (1985). In this case that would be the amount of the premiums which the chancellor did apply against the deficiency.

■ The appellants' final argument is that the chancellor erred in refusing to award damages to appellants after finding that the appellee was negligent in failing to obtain the mortgage insurance. The argument is without merit for the reason that appellants suffered no damage as a result of the appellee's negligence, as already set out. They face the same cause of action for foreclosure and deficiency judgment they would have faced had the mortgage insurance been purchased.

Affirmed.

NEWBERN, J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The logic of the majority holding escapes me. I do not understand how the lender can be found negligent for collecting insurance premiums from the borrower and not obtaining the insurance, and not be held responsible for damages. The return of the premium on the three loans is small satisfaction indeed for the wrong the bank had inflicted on these borrowers.

The opinion clearly demonstrates on its face why it is wrong. The appellants applied for and received loans on four different properties. They paid a premium for mortgage credit insurance on the four loans, which were all approved on the same day. The bank covered one of the loans with mortgage credit insurance, in accordance with the terms of the loan agreements. However, the appellee failed to procure insurance on the other three, although it continued to collect the premiums from the appellants. The failure to cover the three loans was negligent and it was so found by the trial court and the majority of this court. The appellants have been afforded no remedy at all; instead they are saddled with a deficiency judgment for more than $100,000.

The mere fact that the balance of the loan which was properly insured was paid to the bank without foreclosure is proof of the damage to the appellants. The three uninsured loans were foreclosed and resulted in a deficiency judgment against the appellants. Whether the loan that was covered by the mortgage

insurance will ever be revived against the appellants is questionable. Obviously if some action is commenced, the appellants will have the right to defend or settle. In any event, they will be free of a huge judgment during the time that no legal action is brought against them as a result of the loan which was insured. Not having clairvoyant power, I am unable to see that the FHA will ever foreclose or seek subrogation on the loan that was paid. The very purpose of the mortgage insurance is to build up a fund to pay the deficiencies to FHA when foreclosures are required.

I will briefly consider the majority opinion's discussion of estoppel. The majority relies on *Padgett* v. *Haston*, 279 Ark. 367, 651 S.W.2d 460 (1983), for the rejection of the claim of estoppel. The four elements in the doctrine of estoppel are set out in the majority opinion. The first element requires that the party to be estopped know the facts. Obviously, the appellee bank knew the facts. Certainly the second requirement is present because the bank knew the borrower had a right to believe and did in fact believe that FHA insurance had been procured on all four loans. The third element is met by the fact that the appellants did not know the truth, i.e., that the bank had not obtained the FHA insurance. The fourth element is surely met because the borrowers relied completely on the lender to purchase the insurance and as a result have obviously been injured. The extent of their injuries is not known. Perhaps their damages will be exactly the amount of the deficiency judgment. There is simply nothing in the record to indicate that the appellants either were not completely innocent or that they did not completely rely upon the bank to obtain the insurance required. Had they been told of the failure to obtain the insurance there is no doubt that they would have immediately made arrangements to acquire the coverage. Under the circumstances of this case, the bank is estopped.