Larry REED *v.* Paul HAMILTON

93-397                                            864 S.W.2d 845

Supreme Court of Arkansas
Opinion delivered November 8, 1993

*Hale, Fogleman & Rogers*, by: *Joe M. Rogers*, for appellant.

*Gerald A. Coleman*, for appellee.

TOM GLAZE, Justice. Larry Reed filed this action for conversion against Paul Hamilton and Del Perry Ford, an automobile dealership in West Memphis. After Del Perry was dismissed with prejudice from the lawsuit, Hamilton was tried by a jury which returned a verdict in Reed's behalf, finding Hamilton was 100% responsible for Reed's damages in the amount of $2,100. The trial court set Reed's verdict aside and Reed brings this appeal, claiming the trial court erred in doing so.

On June 25, 1990, Patsy Reed, Larry Reed's wife, contacted Paul Hamilton, a fleet manager and new car manager of Del Perry Ford. Mrs. Reed requested that Hamilton deliver two trucks, a 1988 and 1989 model, to the Reed family farm in Earle, so that her husband and two sons could look them over. She told Hamilton that Larry was considering buying either one or both of the trucks, but that he might not buy either. Larry Reed had previously purchased at least four vehicles from Hamilton.

On June 26, 1990, Hamilton delivered both trucks to the Reed farm where he spoke with Larry Reed. Reed delivered to Hamilton a $21,200 check payable to Del Perry, and instructed Hamilton to hold the check until Reed made a final decision as to whether he would purchase either of the vehicles. Hamilton

indicated that he understood that Larry Reed had not committed himself to purchasing either truck and assured Reed that he would hold the check until he received further notification.

On June 27, 1990, Reed notified Hamilton that he was only interested in purchasing the 1989 model truck and that he would return the 1988 model. Hamilton agreed to continue to hold the $21,200 check until Reed returned the 1988 truck and delivered a new check for the 1989 truck. Five days later, one of Reed's employees returned the 1988 truck to the Del Perry lot, but due to a misunderstanding between the parties, there was a failure either to deliver the new check or to pick up the $21,200 check. Reed testified that he had believed his son had met with Hamilton and made the exchange, but learned later that such exchange had not occurred when Reed's bank notified him that his account was overdrawn. At this time, Reed also learned that his $21,200 check had been cashed on July 2 or July 3.

After discovering that his check had been cashed, Reed contacted Del Perry and was informed that ownership of Del Perry had been transferred to Ford Motor Company on May 30, 1990. Apparently, Hamilton had left the dealership in August of 1990. Del Perry informed Reed that both trucks had been titled to him on June 26, 1990, the date Reed delivered the $21,200 check to Hamilton, and that Del Perry would not honor the earlier agreement Reed had entered into with Hamilton. The title to the 1988 truck was eventually discovered in Hamilton's desk, and when Reed realized Del Perry would not honor his agreement with Hamilton, Reed sold the 1988 truck back to Del Perry at a $2,100 loss.

At this stage, Reed filed an action for conversion, seeking both compensatory and punitive damages against Hamilton and Del Perry, jointly and severally. Prior to trial, the court entered an order of dismissal as to Del Perry upon its finding that Reed's claim against Del Perry had been settled. At trial, the jury awarded Reed $2,100 compensatory damages against Hamilton and apportioned the responsibility for Reed's loss between Hamilton and Del Perry — 100% for Hamilton and 0% for Del Perry. Afterwards, the trial court found that, as a matter of law, Hamilton was not guilty of conversion and set aside the jury's verdict. The court then dismissed Reed's complaint with prejudice.

■ The standard by which we review the granting of a judgment n.o.v. is stated in *Lancaster* v. *Schilling Motors, Inc.*, 299 Ark. 365, 367-368, 772 S.W.2d 349, 350 (1989), wherein this court stated as follows:

> In reviewing the granting of a judgment n.o.v., we affirm only if we find there is no substantial evidence to support the jury verdict. We review the evidence and any reasonable inferences deducible therefrom in the light most favorable to the party against whom the judgment n.o.v. was entered.

In *Lancaster*, we also noted there that we changed our previous standard of recognizing a broad discretion in the trial court's setting a jury verdict aside to a more stringent standard favoring the jury's decision. *See Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982).

■ In reviewing the case at hand, we first look to the proof requisite to establishing liability for the tort of conversion and note such proof requires a showing that the defendant wrongfully committed a distinct act of dominion over the owner's property which is a denial of or is inconsistent with the owners' rights. *Elliot* v. *Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991); *McKenzie* v. *Tom Gibson Ford, Inc.*, 295 Ark. 326, 749 S.W.2d 653 (1988). If the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *Id. See also, Elliott* v. *Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991).

■ In viewing the facts in the light most favorable to Reed, we conclude that Hamilton had agreed to hold Reed's check until Reed decided whether he wanted either of the trucks. Reed never agreed to purchase the 1988 truck, but instead returned it. Significantly, Hamilton agreed to exchange the $21,200 check that had been deposited with him for an $11,100 check when Reed informed Hamilton that Reed would purchase only one of the trucks. Contrary to the agreement, Hamilton delivered the $21,200 to the Del Perry business manager, and at that time, the titles to both vehicles were transferred to Reed.

In *McKenzie*, 295 Ark. 326, 749 S.W.2d 653, we held that Tom Gibson Ford, Inc. had no right to deliver a check to Ford

Motor Credit Company which McKenzie had previously deposited with Tom Gibson Ford because that delivery was in direct violation of McKenzie's agreement with Tom Gibson Ford. A salesman at Tom Gibson had assured Ms. McKenzie that her check would be returned to her when she decided against purchasing a vehicle from Tom Gibson Ford. In the present case, Hamilton similarly transferred Reed's check to Del Perry in direct violation of his agreement with Reed. As pointed out above, we noted in *McKenzie* that an act of conversion may occur even when the alleged converter derives no personal benefit from the transfer. Therefore, it is immaterial whether Hamilton benefitted from the conversion in this case. Based upon our holding in *McKenzie*, Hamilton converted the check when he delivered it to the business manager, even if he did not participate in cashing the check; the conversion occurred before the check was ever cashed.

At trial, Hamilton testified, saying, "I knew that I was supposed to hold the check until such time as I was told that they were agreeable to buying one or more or maybe none of the trucks." He also agreed with Reed that Reed had previously bought trucks from Hamilton personally, rather than purchasing them through the Del Perry Ford entity.

In light of the foregoing circumstances, whether the parties intended that Hamilton agreed to be personally charged with holding the check or whether he agreed to hold the check only as an agent of the Del Perry Ford corporation was a material issue of fact. The evidence presented was sufficient to support the jury's verdict that Hamilton agreed personally to hold the check and that he transferred the check to Del Perry in direct violation of this agreement.

For the foregoing reasons the trial court's decision to set aside the jury verdict is reversed with direction to reinstate the verdict.