Orena DENT *v.* Lula WRIGHT and J.L. Wright, Jr.

94-901                                          909 S.W.2d 302

Supreme Court of Arkansas
Opinion delivered October 30, 1995

258

*Murray Grider*, for appellant.

*Robert H. Crank*, for appellees.

ROBERT H. DUDLEY, Justice. On May 6, 1993, plaintiff Orena Dent gave a joint and several general power of attorney to her sister, defendant Lula Wright, and her nephew, defendant J.L. Wright, Jr. Lula Wright is the mother of J.L. Wright, Jr. On the same day plaintiff opened a joint bank account in her and her sister's names. There was no designation to the banking institution that the account was not to be the property of both joint tenants. *See* Ark. Code Ann. § 23-32-1005(1)(A) (Repl. 1994). Both plaintiff and defendant Lula Wright wrote checks on the account. Appellant wrote most of the checks, but there is no question that all of the checks written by defendant Lula Wright were for the benefit of plaintiff. On March 14, 1994, about ten months after plaintiff opened the joint bank account, plaintiff gave bills of sale to defendant J.L. Wright, Jr., for an automobile and for a mobile home. The bill of sale for the automobile reflected a consideration of one dollar, and the bill of sale for the mobile home reflected a consideration of one thousand dollars, but, in fact, no consideration was paid. On March 24, 1994, defendant Lula Wright withdrew all of the money from the joint banking account. Defendant Lula Wright does not contend that she is the owner of the money. Instead, she states that it is plaintiff's money, but if the plaintiff's name remained on the account, she would waste the money and become an indigent.

Later, plaintiff decided that she wanted back the car, the mobile home, and the money, and asked for their return. Both defendants refused. Plaintiff employed an attorney who made formal demand upon both defendants for the return of the property. Defendants declined. Plaintiff filed this one suit against the two separate defendants. The chancellor ruled in favor of each of the defendants, and plaintiff appeals. We affirm in part and reverse in part. For clarity, we discuss the suit against the separate defendants in the first two separate parts of this opinion, and discuss a subject-matter jurisdiction issue in the third part.

## I.

On appeal, plaintiff contends that the chancellor erred in ruling that J.L. Wright did not exercise undue influence or commit fraud on the plaintiff to obtain the bills of sale to the automobile and mobile home. Defendant J.L. Wright, Jr,. testified that plaintiff told him she wanted to live in a nursing home and wished to give him her car and mobile home. He said he knew that she gave other relatives property amounting to about $60,000, and later became angry at those relatives and demanded back the property. In fact, she previously had given the same car and mobile home to another nephew and then sued the nephew for return of property. He testified that he told her the only way he would accept the car and mobile home was upon the advice of her attorney and through a valid legal transfer of the titles. He testified that he told her to follow the advice of her lawyer. He testified that he and Lula Wright subsequently took plaintiff to her attorney, J.F. Sloan, III, for advice.

Mr. Sloan, a respected attorney in the community, testified that he previously represented plaintiff; in fact, he had represented her in a suit against another nephew, William Sexton, to recover the same car and mobile home. He stated that plaintiff called his office for an appointment, and, at the appointed date, plaintiff, J.L. Wright, Jr., and Lula Wright came to his office. He said that he advised plaintiff against transferring the titles to defendant J.L. Wright, Jr., but she insisted on so doing. He testified that he did not witness any encouragement or inducement being made by either of the Wrights, and in fact their actions were "to the contrary" while plaintiff was "insistent." He testified that plaintiff was "impatient" because he did not prepare the documents as quickly as she wanted.

Plaintiff did not testify to any undue influence or fraud. She testified that she did not recall conveying her car and mobile home to defendant J.L. Wright, Jr. However, she also testified that she remembered going to her attorney's office and signing some papers, but did not remember what they were. She testified, "When my sugar gets high or low or whatever happens there is times that I don't remember."

A niece, Freda Butler, testified that plaintiff gave her $17,500.00 on July 19, 1991, or almost three years before she con-

veyed the car and mobile home to defendant. She testified that plaintiff gave William Sexton, another nephew, money, the same car, and the same mobile home, but then became "disturbed" about those gifts. She further testified that plaintiff gave Sexton and a stepdaughter equal amounts of money at the same time she gave her the $17,500.00. She stated she observed that plaintiff was confused at times, but not when she gave her money.

Chancery decisions are reviewed *de novo* on appeal, but the appellate court will not reverse the findings of the chancellor unless they are clearly erroneous. *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 553, 713 S.W.2d at 464.

It was tacitly admitted that defendant J.L. Wright, Jr., was in a fiduciary relationship with appellant at the time he obtained the titles because it was admitted that he held a power of attorney from plaintiff. A person who holds power of attorney is an agent, and it has long been recognized that a fiduciary relationship exists between principal and agent in respect to matters within the scope of the agency. *Yahraus* v. *Continental Oil Co.*, 218 Ark. 872, 239 S.W.2d 594 (1951). Transactions between persons connected by fiduciary relations will be closely scrutinized when the relation implies that one person has controlling influence over the other. *Hawkins* v. *Randolph*, 149 Ark. 124 (1921). However, even in fiduciary relationships this court has refused to find undue influence in the transfer of property when there has been no showing that the donees said or did anything to put the donor in a position of fear or that they committed fraud on her or overreached her in any way. *Howard* v. *Glaze*, 292 Ark. 28, 727 S.W.2d 843 (1987). This is true even when there is evidence to raise suspicion about impure motives. *Id.* at 31, 727 S.W.2d at 846.

It has been noted that there are not a lot of Arkansas cases on the subject of undue influence or duress. *See Cox* v. *McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993). However, it is generally recognized that in order to invalidate a contract, undue influence must operate to deprive a party of his or her free

will. 17A Am. Jur. 2d *Contracts* § 237 at 240 (1991). When unfair advantage in a transaction is rendered probable because of superior knowledge of the matter derived from a fiduciary relationship; from overmastering influence on the one side; or from weakness, dependence, or trust justifiably reposed on the other side, it is incumbent on the stronger party to show that no deception was practiced. *Id.; see also* Restatement (Second) of Contracts § 177 (1979).

■ Here, there was no proof that defendant J.L. Wright, Jr., took unfair advantage of plaintiff because of the fiduciary relationship, that he took advantage of her because of trust, or that he deceived plaintiff in any manner. There was substantial evidence that the conveyances were entirely of plaintiff's volition, and there was substantial proof that J.L. Wright, Jr., did not practice any deception. Thus, we affirm the chancellor's ruling on this issue. Because we affirm the ruling of the chancellor we need not address the propriety of plaintiff's asking punitive damages in chancery court.

## II.

■■ Plaintiff next contends that the trial court erred in refusing to rule that Lula Wright wrongfully converted the money in the joint bank account. The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights. *Reed* v. *Hamilton*, 315 Ark. 56, 864 S.W.2d 845 (1993). The bank account that was closed was a joint tenancy with right of survivorship. Ark. Code Ann. § 23-32-1005. Under the foregoing statute, defendant Lula Wright was an "owner" with "rights." The right to withdraw funds is one of the rights enjoyed by a joint tenant of a bank account. *Nall* v. *Duff*, 305 Ark. 5, 805 S.W.2d 63 (1991). The signature card for the joint bank account provided, by marking, that the account was "Joint — With Survivorship (and not as tenants in common)." Defendant Lula Wright's act of withdrawing the funds from the joint account was consistent with her rights as a cotenant of the account.

■ However, a joint tenant may not, by withdrawing funds in a joint tenancy, acquire ownership to the exclusion of the other joint tenant. In *Hogan* v. *Hogan*, 313 Ark. 374, 855 S.W.2d 905 (1993), we held that even though a joint tenant may

withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the joint tenant for the excess so withdrawn. *Id.* at 380, 855 S.W.2d at 909. In that case, two joint tenants cashed a certificate of deposit that had been purchased by their father, the third joint tenant, from funds belonging entirely to him. *Id.* at 375, 855 S.W.2d at 906. The trial court refused to give relief to the father, and granted summary judgment on the premise that the above statute provides that any joint tenant can redeem a certificate of deposit and whoever redeems it is entitled to the entire amount. *Id.* at 376, 855 S.W.2d at 906. In reversing, we held that the statutory provision means that the funds may be paid without liability to the financial institution to any one of the joint tenants, but that does not determine ownership to the exclusion of other joint tenants. *Id.* at 378, 855 S.W.2d at 909. We remanded and directed the chancellor to conduct a hearing on the merits of the matter between the joint tenants, "including a determination as to the imposition of a constructive trust and to apportion the proceeds in accordance with intentions of the parties." *Id.* at 381, 855 S.W.2d at 909. We noted that Ark. Code Ann. § 18-60-101 (1987) recognizes the common rights of co-tenants by providing for an accounting when any joint tenant takes benefits greater than his interest. *Id.* § 18-60-101(a). In addition, we cited with approval *Savage* v. *McCain*, 21 Ark. App. 50, 728 S.W.2d 203 (1987), a case in which the court of appeals affirmed a chancellor's decision to order the appellant to pay the appellee one-half of the funds from joint tenancy accounts that the appellant had transferred to an account in her name only upon the death of the third joint tenant. *See Savage*, 21 Ark. App. at 51, 728 S.W.2d at 203-04.

The undisputed proof in the case at bar showed that all of the money deposited in the joint banking account came from plaintiff. Defendant Lula Wright testified that none of the money deposited was hers; that she withdrew all of the money from the joint account, and that she did so only because plaintiff, her sister, had become incompetent, and that she was afraid that plaintiff would waste the little money she still retained from her late husband's estate. Defendant Lula Wright testified that she did not claim any of the money as her own. Under these facts the chancellor, without expressly citing the statute and *Hogan* v. *Hogan*, and without using the word "trust," correctly ruled that

defendant Lula Wright held the money solely for the benefit of plaintiff. In the oral findings of fact the chancellor stated:

> As far as the money that's in . . . [defendant] Mrs. Wright's name for the benefit of [plaintiff] Mrs. Dent, I'm of the opinion that it should probably remain there with Mrs. Wright posting a bond to show that the money is not used for anything except Mrs. Dent's needs.

> I'm of the opinion that for the present time Mrs. Dent is not capable of handling her business affairs, and this should be done by a guardianship, and I don't know who could be appointed guardian.

After some discussion plaintiff's attorney stated that he had asked a bank if it would serve as guardian, but the response was negative. Plaintiff's attorney then asked if the court was also ruling that plaintiff was not competent to enter into a contingent fee contract with him. The court responded:

> I'm just of the opinion after hearing the testimony today that she's not competent to handle her affairs, and I just feel like someone needs to be handling her business affairs for her for the protection of this money that she has left. And I don't know whoever I appoint, since you represented her, you would be entitled to be paid for services if that's what you're asking about.

Plaintiff's attorney stated that he had exhaustively searched for someone to serve as guardian of plaintiff, but had not been able to find anyone willing to serve. The trial court then stated, "No funds will be withdrawn from that or anything happen to that until the time I appoint someone to take charge of the account."

The written order of the court provides that plaintiff is found to be incapable of taking care of her estate and a guardian is appointed to receive her assets, and, "The monies which are held by [defendant] Lula Wright for the benefit of Orena Dent shall be transferred to the guardian of the estate and shall not be disbursed by the guardian without court order."

In summary, the chancellor correctly ruled that the account was a joint tenancy with right of survivorship and that

defendant Lula Wright had a right to withdraw the funds as a cotenant. The chancellor additionally found that plaintiff Dent deposited all of the money in the joint account, and when defendant Lula Wright withdrew the funds and placed them in an account in her name, she held the money for the benefit of plaintiff Orena Dent. This amounts to a holding that the money is held in a constructive trust. *See Hogan*, 313 Ark. at 381, 855 S.W.2d at 909.

■ Plaintiff does not question the above ruling. Instead, she argues that it was an insufficient recovery because, "The trial court erred in finding that appellee did not convert appellant's funds." The argument is without merit for a number of reasons. Contrary to the implication of plaintiff's argument, the chancellor was not asked to rule on a wrongful conversion, and did not do so, and we will not reverse on an issue not raised or ruled upon. *Newton v. Chambliss*, 316 Ark. 334, 871 S.W.2d 587 (1994). In addition, we need not determine the issue of whether a conversion occurred because, even if it should have occurred, the proper measure of damages is the market value of the property at the time and place of the conversion. *Burdan v. Walton*, 286 Ark. 98, 689 S.W.2d 543 (1985). Plaintiff recovered that amount under the chancellor's ruling, and cannot recover it a second time under a conversion theory. *Sandusky v. First Nat'l Bank*, 299 Ark. 465, 468, 773 S.W.2d 95, 97 (1989).

### III.

Plaintiff's third assignment is that the chancery court was without subject-matter jurisdiction to appoint a guardian for plaintiff. The argument has merit even though plaintiff acquiesced to the action in the chancery court.

■■ The parties cannot waive subject-matter jurisdiction, and the issue can be raised at any time. *Arkansas Dept. of Human Serv. v. Estate of Hogan*, 314 Ark. 19, 858 S.W.2d 105 (1993). Jurisdiction of the probate court over all matters of guardianship, other than guardianships ad litem in other courts, *is exclusive*. Ark. Const. art. 7, § 34; Ark. Code Ann. § 28-65-107(a) (1987) (emphasis added). The section of the Arkansas Constitution that is now Article 7, section 34, did not consolidate the chancery and probate courts, and, while the judge of the chancery court is also the judge of the probate court, the judge

conducts each court separately. *Wooten* v. *Penuel*, 200 Ark. 353, 140 S.W.2d 108 (1940). The section does not permit courts of chancery to lift matters over which the probate court has exclusive jurisdiction out of probate courts and apply equitable principles in disposing of controversies cognizable only in probate. *Id.* at 357-58, 140 S.W.2d at 111; *see also Hilburn* v. *First State Bank*, 259 Ark. 569, 535 S.W.2d 810 (1976) ("probate courts are vested with exclusive jurisdiction in matters relative to . . . guardians. . . ."); *Thompson* v. *Dunlap*, 244 Ark. 178, 424 S.W.2d 360 (1968) (holding that chancery and probate courts are separate tribunals, each having own jurisdiction and that a chancery court cannot "inherit jurisdiction" from probate court in same county); *Janssen* v. *Blissenbach*, 210 Ark. 22, 193 S.W.2d 814 (1946) (stating that the two courts are wholly distinct and operate independently of one another and that trial court, sitting as chancery in that case, correctly did not pass on questions reserved for probate). Consequently, the chancery court was without subject-matter jurisdiction to appoint a guardian of plaintiff's estate, and we reverse and dismiss on this one point.

Affirmed in part; reversed and dismissed in part.

GLAZE, J., dissenting in part. I disagree only with point II of the majority opinion. To establish liability for the tort of conversion requires a showing that the defendant (here Lula Wright) wrongfully committed a distinct act of dominion over the owner's property (here Orena Dent's) which is a denial of, or is inconsistent with, the owner's rights. If the defendant exercises control over the goods in exclusion or defiance of the owner's rights, it is a conversion, whether it is for defendant's own use or another's use. *Reed* v. *Hamilton*, 315 Ark. 56, 864 S.W.2d 845 (1993).

Here Lula placed $4,745.50 of Dent's funds into an account listed as "Lula Wright for Orena Dent." One week later, Lula refused to return any of these funds to Orena. The evidence reflects that Lula was in a special position of trust regarding Orena, and was a dominant party in the control of Orena's money. When Lula refused Orena access to her money, Lula clearly acted inconsistent with Orena's ownership.

The majority opinion suggests that, when the trial court found Lula was holding the disputed funds in an account for

Orena, the trial court in effect determined the money was held in constructive trust. That may be true but if the trial court impressed a constructive trust in these circumstances, that action was done for Orena's beneficial interests and did not give Lula the right to retain Orena's funds when she demanded their return.

A constructive trust is an implied trust and arises by the operation of law when equity so demands. *Hall* v. *Superior Federal Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990). Also relevant to the situation at hand, the law is settled that, while a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against the other suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust. *Id.* Here, Lula and Orena are sisters and Lula enjoyed a confidential and fiduciary relationship with Orena, which included Orena's executing a power of attorney in Lula's name and Lula's handling Orena's money.

The trial judge found that Lula committed no fraud in handling her sister's affairs, and the record supports that finding. Even so, Lula clearly controlled Orena's funds, and for whatever reason, wilfully and contrary to Orena's ownership rights, kept those funds from Orena when she demanded them.

Perhaps a proper guardianship of Orena's estate would have resolved this issue concerning Orena's money, but as discussed in point III of the majority opinion, the chancellor had no authority to impose one. Hopefully, when this cause is remanded to correct point III, the merits of point II can be properly resolved as well.

My main reason for writing is to emphasize disagreement with the majority opinion's suggestion that a constructive trust under the facts of this case allowed Lula to exclude Orena from her money. To recover her funds, Orena was required to bring this suit. Contrary to the conclusion reached in the majority opinion, Orena never sought double recovery, nor would she have obtained a double award. Orena's suit alleged undue influence, fraud and conversion of funds which she asserted resulted in compensatory and punitive damages. While no fraud was involved on Lula's part, Orena still was entitled to her money upon demand.

Instead Lula continues to withhold those monies, but now does so under an inappropriately imposed "frozen" constructive trust.