# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 12-2044
_____

In re: Living Hope Southwest Medical Services, LLC

*Debtor*

------------------------------

Pillar Capital Holdings, LLC

*Appellant*

v.

Renee S. Williams

*Appellee*

Jack Goldenberg

*Defendant*

_____

## No. 12-2119
_____

In re: Living Hope Southwest Medical Services, LLC

*Debtor*

------------------------------

Jack Goldenberg; Pillar Capital Holdings, LLC

*Appellee*s

v.

Renee S. Williams

*Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: November 15, 2012
Filed: April 26, 2013
[Unpublished]

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Pillar Capital Holdings, LLC ("Pillar") provided Living Hope Southwest Medical Services, LLC ("the Debtor" or "Living Hope"), a debtor in bankruptcy, with short-term bridge loans. Pillar's sole member, Jack Goldenberg, reimbursed Pillar for these loans using blank checks that had been pre-signed by the Debtor. Under 11 U.S.C. § 549, the Debtor's trustee, Renee S. Williams ("the Trustee"), sought to avoid the post-petition transfers from the Debtor to Pillar and thus repayment of reimbursements (totaling $111,200) that had been given Pillar. The Trustee also sought to hold Pillar and Goldenberg jointly and severally liable by piercing Pillar's

corporate veil in order to hold Goldenberg personally liable. The bankruptcy court[1] ordered Pillar to repay $111,200 to the Debtor, stating that the short-term bridge loans were not in the ordinary course of business under 11 U.S.C. § 364(a). The bankruptcy court, however, refused to pierce the corporate veil and hold Goldenberg personally liable for recovery of the Debtor's transfers to Pillar. Both Pillar and the Trustee appealed to the district court.[2] The district court affirmed the bankruptcy court. The district court found that the payments were not made in the ordinary course of business but refused to pierce Pillar's corporate veil, thus holding that Goldenberg was not personally liable for the judgment. Pillar appeals the bankruptcy court's ruling that the post-petition transfers were not in the ordinary course of business. The Trustee cross-appeals the bankruptcy court's ruling that Goldenberg should not be held personally liable. We affirm.

## I. *Background*

The Debtor filed for Chapter 11 bankruptcy on July 18, 2006 and converted the filing to a Chapter 7 liquidation on August 15, 2008. Pillar is a New York LLC that specializes in assisting financially troubled businesses. Jack Goldenberg is the sole member and president of Pillar. Before filing bankruptcy, the Debtor obtained a revolving line of credit from Northern Healthcare Capital (NHC). The Debtor was indebted to NHC for approximately $3,250,000. Under its agreement with NHC, the Debtor was required to deposit all of it collections in a lockbox account that was swept daily by NHC. NHC contacted Goldenberg regarding the possibility of Pillar's obtaining an interest in the Debtor. NHC's initial contact with Goldenberg and Pillar's subsequent post-petition transfers with the Debtor all occurred between November 2007 and May 2008. In a letter from NHC regarding modification of the Debtor's

---

[1]The Honorable James G. Mixon, United States Bankruptcy Judge for the Western District of Arkansas.

[2]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

financing arrangement and a possible reorganization, NHC stated that Goldenberg would have the option to become a 50 percent member of the Debtor if he provided the Debtor with a $250,000 line of credit to be subordinated to NHC and made a $25,000 good faith payment to NHC. Goldenberg paid the $25,000 with a check written on a National Mutual Inc. account and signed by Goldenberg. However, the letter drafted by NHC was only signed by one representative of the Debtor and not signed by Goldenberg, and thus, the agreement was not finalized. The letter also contained a clause stating that it would expire on March 12, 2008 if it was not signed by then.

After making the good faith payment, Goldenberg began to take an active part in the Debtor's business affairs. He managed the Debtor's personnel matters and its financial operations. One owner of the Debtor even announced to its employees that Goldenberg "ha[d] agreed to come on board as our financial partner." *In re Living Hope Sw. Medical Servs., LLC*, 450 B.R. 139, 145 (Bankr. W.D. Ark. 2011) (quoting Pl.'s Ex. 36). As part of his financial advice to the Debtor, Goldenberg suggested the Debtor open debtor-in-possession accounts in a New York bank rather than a local bank so that the payroll checks would take longer to clear. Goldenberg also found less expensive insurance policies and payroll companies.

In addition, while the Debtor was still under Chapter 11 and struggling to pay its employees, Pillar made no-interest loans to the Debtor with no formal promise from the Debtor to pay back these loans. Pillar made these loans so that the Debtor's payroll checks would clear. Goldenberg promised to continue due diligence to determine whether he would invest in the Debtor. There was testimony that Pillar's monetary support was critical to keeping the Debtor financially viable as a going concern. These payments were described by Goldenberg as short-term bridge loans. As suggested by Pillar, the Debtor opened bank accounts in New York. When the New York bank accounts were opened, the first ten checks on the account were stamp-signed by the Debtor's owner and Debtor's comptroller but otherwise left

blank. Goldenberg attempted to reimburse Pillar for these self-described short-term loans by taking a signed blank check from the Debtor's assistant comptroller every time he wrote a check to the Debtor and writing in the same amount he loaned to the Debtor. Of ten checks, six were negotiated, three were never deposited, and one check was dishonored. The six honored checks were addressed to Pillar, and the dishonored check was addressed to Goldenberg personally. The Debtor repaid a total of $111,200 ($86,200 from six checks and a $25,000 debit of Debtor's account) to Pillar but the Debtor has yet to pay a remaining balance of $88,500 that Pillar contends it transferred to Debtor's accounts for the purchase of equipment and other expenses.

Following the bankruptcy case's conversion to Chapter 7 and pursuant to 11 U.S.C. § 549, the Trustee filed complaints against Pillar and Goldenberg seeking to avoid the post-petition transfers from the Debtor to Pillar while the Debtor operated as a debtor-in-possession under Chapter 11. The bankruptcy court determined that the six negotiated checks and the debit were post-petition transfers from the Debtor to Pillar to reimburse Pillar for advances. The bankruptcy court ultimately concluded that these payments were not in the ordinary course of business under § 364(a) and therefore were avoidable by the Trustee. Noting that there was no court approval obtained prior to the transfer and that such approval was necessary under § 364(a), the bankruptcy court entered a judgement of $111,200 against Pillar, but it refused to hold Goldenberg personally liable for these post-petition transfers, as there was no evidence to support piercing Pillar's corporate veil.

Pillar counterclaimed against the Trustee for payment of the outstanding debts as administrative expenses and turnover of equipment Pillar had provided to Debtor that was valued at approximately $38,735. In the alternative, Pillar petitioned the bankruptcy court for *nunc pro tunc* approval of post-petition transfers, arguing that Goldenberg was unaware the prior court approval was necessary. The bankruptcy court dismissed the counterclaim without prejudice and denied Pillar's *nunc pro tunc* approval of post-petition transfers under § 364(b), because there were no

extraordinary or unusual circumstances that would warrant Pillar's failure to seek bankruptcy court approval before engaging in the post-petition transfers. The bankruptcy court found that the administrative expense claim was not properly brought in an adversary proceeding. The bankruptcy court further found the claim was precluded because the outstanding debts were already considered to be expenditures that were not in the ordinary course of business and not authorized by the court. Also rejecting Pillar's turnover counterclaim, the bankruptcy court reasoned that the Debtor was not the owner of the equipment, a criteria of the turnover statute.[3]

Pillar appealed the bankruptcy court's decision to the district court, arguing that the post-petition transfers were made in the "ordinary course of business" or in the alternative Pillar was entitled to *nunc pro tunc approval* of the post petition-transfers, and the bankruptcy court erred in not allowing it to adjudicate the administrative expenses in an adversary proceeding. The Trustee cross-appealed the bankruptcy court's decision to not hold Goldenberg, in his personal capacity, jointly and severally liable with Pillar. The district court affirmed the bankruptcy court's decision with respect to the post-petition transfers and agreed that they were not in the ordinary course of business. In reaching its conclusion, the district court found that the bankruptcy court properly utilized the appropriate legal tests, the vertical and horizontal tests, to determine if the post-petition transfers were in the ordinary course of business. The district court noted that even though the Debtor used funds from Pillar for day-to-day operating expenses, the § 364(a) "ordinary course of business" inquiry focused on the transaction itself and not on how the funds were used. The court concluded that the loan transactions themselves were not in the ordinary course of business, because reasonable creditors would not have expected a financing arrangement like the one Pillar had with the debtor (vertical test).

---

[3]The equipment turnover counterclaim is not part of this appeal. The bankruptcy court also rejected prejudgment interest but awarded costs of litigation to the Trustee.

The district court further noted that even though the bankruptcy court had approved a post-petition financing arrangement with NHC, it "did not give [the] Debtor unbridled freedom to then enter into any type of short term financing arrangement with any creditor that came along offering to cover the same types of expenses." *In re Living Hope Sw. Medical Servs., LLC*, No. 4:11-CV-04043, 2012 WL 1078345, at \*4 (W.D. Ark. March 20, 2012). The district court also found that no evidence showed Pillar's practice was used in the industry (horizontal test). Concluding that the Trustee was entitled to avoid all unauthorized post-petition repayments from the Debtor to Pillar, the district court affirmed the bankruptcy court's judgment against Pillar for $111,200. The district court also concluded that the bankruptcy court did not commit error in denying Pillar's *nunc pro tunc* approval of post-petition transfers. As it relates to administrative expenses, the district court found that the bankruptcy court did not err in refusing to adjudicate the claim in an adversary proceeding. Finally, the district court agreed with the bankruptcy court that there was no evidence to support piercing Pillar's corporate veil since Goldenberg consistently observed corporate formalities.

## II. *Discussion*

In this appeal, Pillar challenges the bankruptcy court's holding that the post-petition transfers to the Debtor were avoidable under § 549, because the bankruptcy court never authorized the transfers and the transfers were not made in the "ordinary course of business" under § 364(a). Pillar also challenges the court's interpretation of transactions in the "ordinary course of business" under § 364(a). The Trustee cross-appeals the district court's decision not to hold Goldenberg personally liable for the $111,200 judgment.

### A. *Transfers Between Pillar and Debtor*

First, Pillar argues that the loans, which it made to the Debtor were meant to defray operating expenses and thus were incurred in the ordinary course of business. Therefore, Pillar argues that under § 364(a), court authorization was not needed for

these post-petition transfers. Pillar admits that the transactions did not meet the horizontal test, but it contends that this court should reject the use of the horizontal and vertical tests. Pillar argues that its transactions would pass a reasonableness standard for being in the ordinary course of business under § 364(a) although Pillar also contends that the reasonableness standard should not be used. Pillar, instead, argues that the court should not utilize any tests or standards but rather interpret the "plain language of the statute."

"We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *Papio Keno Club, Inc. v. City of Papillion* (*In re Papio Keno Club, Inc.*), 262 F.3d 725, 728–29 (8th Cir. 2001). Under 11 U.S.C. § 549(a)(1), a bankruptcy trustee "may avoid a transfer of property of the estate that occurs after the commencement of the case." Section 364(a) allows the trustee to extend credit in the "ordinary course of business" without prior court approval. "The creditor asserting the ordinary-course-of-business defense has the burden of production." *In re Living Hope Sw. Medical Servs.*, 450 B.R. at 149 (citing *United States Trustee v. Lombardozzi* (*In re RJC Indus., Inc.*), 369 B.R. 845, 850 (Bankr. M.D. Pa. 2006)).

Section 364(a) does not define the term "ordinary course of business." Bankruptcy courts developed the vertical and horizontal tests as a means for determining whether post-petition transfers are in the "ordinary course of business." The vertical test looks to whether creditors that deal with the debtor would anticipate the type of transaction in question and whether the transaction was "consistent" with pre-petition conduct. *In re Johns-Manville Corp.*, 60 B.R. 612, 616–17 (Bankr. S.D.N.Y. 1986) (citing *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (Bankr. S.D.N.Y. 1983)). The horizontal test requires an inquiry into whether the conduct is "typical in the specific trade covered by the debtor's business." *In re RJC Indus., Inc.*, 369 B.R. at 851.

The bankruptcy court used both the horizontal and vertical tests to determine whether the transfers were in the ordinary course of business. It found that the transactions failed the horizontal test because no evidence was presented that the practice was acceptable within the industry. The transactions failed the vertical test because the transactions subjected other creditors to markedly different risks. The bankruptcy court highlighted that because Goldenberg was aware of when the Debtor had sufficient funds in its account, Pillar gained a superior position over the unsecured creditors by having access to blank checks. Furthermore, the court found that the Debtor represented Goldenberg as a financial partner to employees and not as a "purveyor of bridge loans" that were to be repaid ahead of other creditors. The bankruptcy court further noted that the proper inquiry in post-petition transfer cases is on the advance of the funds rather than how the funds were ultimately used by the debtor. The bankruptcy court also stated there was no *nunc pro tunc* basis warranting an equitable retroactive approval of the credit extension, because the advances by Pillar occurred 27 days after the initial $25,000 payment to NHC, a time period the bankruptcy court felt was more than adequate to file an 11 U.S.C. § 364 motion.

Applying either the horizontal or the vertical test we conclude that Pillar's loans to the Debtor were not in the ordinary course of business. As Pillar concedes, it failed the horizontal test's definition of ordinary course of business, as there is no evidence that the use of blank checks to reimburse a creditor in bankruptcy for short-term bridge loans is typical in the Debtor's industry. In addition, Pillar fails the vertical test, because there was no evidence that any of the Debtor's creditors participated in any practice akin to Goldenberg's blank-check repayment scheme. Although the NFC did have a line of credit with the Debtor, the line of credit was court-approved, and as the district court aptly stated, the NFC arrangement did not give the debtor "unbridled freedom to then enter into any type of short term financing arrangement with any creditor that came along offering to cover the same types of expenses." *In re Living Hope Sw. Medical Servs., LLC*, 2012 WL 1078345, at *4. Furthermore, the Debtor's other creditors would not have reasonably expected the Debtor to enter into

an arrangement, which enabled Pillar to place its claims ahead of other creditors' claims, without the other creditors' knowledge,

Given that Pillar failed both the vertical and horizontal tests the transactions were not in the ordinary course of business under § 364(a).

## B. *Piercing the Corporate Veil*

In her cross-appeal, the Trustee argues that Pillar's corporate veil should be pierced and Goldenberg should be held personally liable for the $111,200 post-petition transfers. The Trustee contends that Goldenberg engaged in misconduct necessitating piercing the corporate veil by: (1) filing false administrative claims and (2) secretly withdrawing funds from the Debtor's overdrafted account.

Our circuit applies state law to determine if it is appropriate to pierce the corporate veil. *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997). We review the bankruptcy court's determinations of state law de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 232, 235 (1991) (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). Because Pillar is a New York corporation, the bankruptcy court used New York law to analyze piercing Pillar's corporate veil. To pierce the corporate veil under New York law the Trustee must show: "(1) that the owners of the corporation exercised complete domination or control concerning the transactions at issue; and (2) that such domination was used to commit a fraud or a wrong against the plaintiff which resulted in harm." *Pergament v. Precision Sounds DJ's, Inc.* (*In re Oko*), 395 B.R. 559, 563 (Bankr. E.D.N.Y. 2008).

Insufficient evidence exists that Pillar committed fraud or conversion to enable piercing of the corporate veil. The bankruptcy court found that Goldenberg had never mingled personal funds and that Pillar did observe corporate formalities so that piercing the corporate veil to hold Goldenberg personally liable was not warranted. The bankruptcy court noted that transfers to Pillar were not conversions because the

-10-

Debtor maintained the power to stop payment at any time and thus had "the ultimate control of the Debtor's checking accounts," and there was no evidence that Pillar acted in a manner contrary to the Debtor's right to possession of the money. *In re Living Hope Sw. Medical Servs., LLC*, 450 B.R. at 156. *See Reed v. Hamilton*, 315 Ark. 56, 59 (1993) (stating that conversion occurs where a "defendant wrongfully committed a distinct act of dominion over the owner's property which is a denial of or is inconsistent with the owners' rights.") The bankruptcy court further noted that as it relates to the $25,000 debit, the Debtor would have had to authorize the debit and thus the record indicates that the Debtor continued to exercise dominion over the debit as well. On these facts, we cannot say the bankruptcy court clearly erred in not piercing the corporate veil to hold Goldenberg personally liable as the Debtor was aware of every transaction involving the blank checks and as the district court noted the Debtor maintained the ability to stop payments, thus maintaining dominion over the funds.

### III. *Conclusion*

Accordingly, we affirm the judgment of the bankruptcy court.

_____