John HOGAN *v.* Robert HOGAN and Betty DeJarnett

92-1347                                    855 S.W.2d 905

Supreme Court of Arkansas
Opinion delivered June 7, 1993
[Rehearing denied July 12, 1993.]

*Steven Napper, Ltd.*, by: *Trish Henry*, for appellant.

*Joyce Kinkead*, for appellee.

STEELE HAYS, Justice. John Hogan, appellant, is the eighty-nine year old father of the appellees, Robert Hogan and Betty DeJarnett. The three were joint tenants of a $99,402 Certificate of Deposit (CD) purchased by John Hogan with funds allegedly belonging entirely to him.

On January 15, 1992, Robert Hogan presented the CD to the bank and redeemed it for a check payable to Robert Hogan or Betty DeJarnett. John Hogan was informed of this action on February 8, 1992, when he went to the bank to renew the CD and learned it had been withdrawn by his son.

John Hogan promptly filed this suit against Robert and Betty, alleging that:

> 1) The CD had been removed by Robert from John's home, at some time when John was not at home and was converted without his knowledge or consent;

> 2) The CD had been cashed by Robert and demand had been made on both Robert and Betty for return of the funds but the request was ignored or refused;

> 3) That John had placed the names of his children on the CD so they would have survivorship rights to the funds in the event of his death and there was an oral agreement between John and his children that their names were on the instrument only so they would have survivorship rights and the children would have no right to obtain the funds while their father was still alive;

> 4) That John's livelihood was dependent on the monthly interest that was generated from the CD and he

was no longer in receipt of those monthly payments.

Appellees answered and moved for summary judgment on the premise that Arkansas law provides that any joint tenant can redeem a CD and whoever redeems it is entitled to the entire amount. The chancellor agreed and granted summary judgment on the basis of Ark. Code Ann. § 23-32-1005 (1987), *Nall* v. *Duff*, 305 Ark. 5, 805 S.W.2d 63 (1991) and *Hall* v. *Superior Federal Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990).

John Hogan appeals from that order, contending, correctly we think, that the trial court misinterpreted the law.

The relevant portions of the statute in question, § 23-32-1005 are:

> Checking accounts and savings accounts may be opened and certificates of deposit may be issued by any banking institution, or federally or state-chartered savings and loan association, in the names of two (2) or more persons, either minor, adult, or a combination of minor and adult. Checking accounts, savings accounts, and certificates of deposit shall be held and payable as follows:

> (1)(A) Unless a written designation to the contrary is made to the banking institution or federally or state-chartered savings and loan association, when a deposit has been made or a certificate of deposit purchased in the names of two (2) or more persons and in the form to be paid to any of the persons so named, or the survivors of them, the deposit or certificate of deposit and any additions thereto made by any of the persons named in the account shall become the property of those persons as joint tenants with right of survivorship.

> (B) The deposit or certificate of deposit, together with all interest thereon, shall be held for the exclusive use of the persons so named and may be *paid* to any of those persons or to the survivors after the death of any of those persons. The *payment* shall be a valid and sufficient release and discharge of the bank or federally or state-chartered savings and loan association for all payments made on account of the deposit or certificate of deposit; [Our emphasis].

(2)(A) If the person opening the account or purchasing the certificate of deposit designates in writing to the banking institution or federally or state-chartered savings and loan association that the account or the certificate of deposit is to be held in "joint tenancy" or in "joint tenancy with right of survivorship," or that the account or the certificate of deposit is to be held in "joint tenancy" or the account or certificate of deposit shall be payable to the survivor or survivors of the persons named in the account or certificate of deposit, then the account or certificate of deposit and all additions thereto shall be the property of those persons as joint tenants with right of survivorship.

(B) The account or certificate of deposit may be paid to or on the order of any one (1) of those persons during their lifetime unless a contrary written designation is given to the banking institution or federally or state-chartered savings and loan association, or to or on the order of any one (1) of the survivors of them after the death of any one (1) or more of them.

(C) The opening of the account or the purchase of the certificate of deposit in this form shall be conclusive evidence in any action or proceeding to which either the banking institution or federally or state-chartered savings and loan association or the surviving party is a party of the intention of all of the parties to the account or certificate of deposit to vest title to the account or certificate of deposit, and the additions thereto, in such survivor.

(D) The payment shall be a valid and sufficient release of the bank or federally or state-chartered savings and loan association for all payments made on account of the deposit or certificate of deposit. . . .

The trial court in its order granting summary judgment stated the following:

### Conclusions of Law

Arkansas Code Ann. § 23-32-1005(2)(C) (1987) declares that the purchase of a Certificate of Deposit as joint tenants with right of survivorship is conclusive evidence of the intention of all of the parties.

The Arkansas Supreme Court in *Hall* v. *Superior Federal Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990) held that if Ark. Code Ann. § 23-32-1005(2)(C) governs, extrinsic evidence of intent is not admissible.

> Although prior case law indicated that the predecessor of Ark. Code Ann. § 23-32-1005 was passed only for the protection of financial institutions, that is not the case under the current Code. . . . And that Robert Hogan had the right to cash the Certificate of Deposits and Defendants Robert Hogan and Betty DeJarnett have the right to possess the entire amount of the proceeds from the Certificate of Deposits, *to the exclusion of plaintiff John Hogan. Hall* v. *Superior Federal Bank, supra; Nall* v. *Duff*, 305 Ark. 5, 805 S.W.2d 63 (1991). [Our emphasis.]

The trial court's comments at the hearing make its interpretation of the statute clear:

> [I]n *Nall* v. *Duff*, 305 Ark. 5, the Supreme Court went further than the *Hall* case [*Hall* v. *Superior Bank*] and stated that joint tenants could withdraw the funds and that, once they did withdraw the funds, that they were their property, conclusive evidence by the statute that they are their property.

We must agree with appellant that the trial court has misinterpreted the statute and our cases dealing with it.

■ There is no question that under § 23-32-1005, any joint tenant has the right to withdraw the entire amount in a joint tenancy account. Section 23-32-1005(1)(B) and (2)(B). Those provisions, however, provide only that the funds may be *paid* to the joint tenant. They do not determine ownership to the exclusion of other joint tenants.

The other pertinent section — § 23-32-1005(2)(C) — recites that when the provisions of the statute are complied with, such compliance will be conclusive evidence

> . . . in any action or proceeding to which either the banking institution or federally or stated-chartered savings and loan association or the surviving party is a party, of the intention of all of the parties to the account or CD, to

vest title to the account or CD, and the additions thereto, in such survivor.

■■ This section recites that compliance with the statute will be conclusive evidence of the parties' intentions that the *surviving party* is entitled to the funds. It does not say that compliance with the statute conclusively vests ownership of the proceeds of the account or CD in whoever happens to withdraw it. The surviving parties in any given case would be those parties remaining after one or more joint tenants had died. This section does not address the rights of a joint tenant who merely withdraws the funds, nor does it deal with the rights of joint tenants among themselves.

■ Sections 23-32-1005(1)(A) and (2)(A), on the other hand, do address ownership among the joint tenants. Both sections provide that if the parties opening the account or CD have complied with the statute in one of two ways, it will be considered a joint account and the money deposited therein "shall be the property of those persons as joint tenants with right of survivorship". In the case at bar the parties agree the statute was complied with and the CD purchased as a joint tenancy with right of survivorship. Therefore under section (1)(A) or (2)(A), the CD was the property of all parties as joint tenants.

As to rights in the property as among joint tenants, there is nothing in § 23-32-1005 that governs that issue, nor do we find it elsewhere in our statutes. Therefore it is necessary to turn to other sources for guidance.

This question has not been before this court previously, though it was addressed by the Court of Appeals in *Savage* v. *McCain*, 21 Ark. App. 50, 728 S.W.2d 203 (1987). There, one joint tenant (Savage) had withdrawn all the funds and refused to account to the other joint tenant (McCain). The parties agreed that Savage had a right to withdraw the funds under Ark. Code Ann. § 23-32-1005 (1987) (formerly § 67-552); the disagreement was over Savage's right to keep the funds to the exclusion of McCain. The Court of Appeals did not resolve the dispute by addressing the rights of joint tenants as among themselves. Rather, it found that a "peculiar relationship of mutual trust and confidence" existed between the joint tenants and that McCain was intended to have a beneficial interest in the funds. On that

basis it upheld the constructive trust imposed by the chancellor.

Looking to other jurisdictions we find that in similar situations the courts have reached the same result as in *Savage*, but have relied on the law of joint tenancy, and the rule is quite clear:

> Even though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the other joint tenant for the excess so withdrawn.

*Leffew* v. *Mayes*, 685 S.W.2d 288 (Tenn. App. 1984). To the same effect see *Wiggins* v. *Parson*, 446 So.2d 169 (Fla. App. 5 Dist. 1984); *McCaulliffe* v. *Wilson*, 41 NC 117, 254 S.E.2d 547 (1979); *Bricker* v. *Krimer*, 13 N.Y.2d 122, 241 N.Y.S.2d 413, 191 N.E.2d 795 (1963); *Austin* v. *Summers*, 237 S.C. 613, 118 S.E.2d 684 (1961) and *Carroll* v. *Hahn*, 498 S.W.2d 602 (Mo. Ct. App. 1973). And generally in accord see 8 ULA Unif. Prob. Code, §§ 6-102, 6-103 and 6-104 (1983).

While our Code does not define substantive rights among joint tenants, it recognizes the common law rights of joint tenants, for it provides for an accounting between them. Ark. Code Ann. § 18-60-101 (1987) states:

> (b) Joint tenants, tenants in common, and coparceners in any real *or personal estate*, may maintain civil actions against their covenants who receive as bailiffs more than their due proportion of the benefits of the estate. [Our emphasis.]

The trial court in this case relied on *Nall* v. *Duff, supra*, to provide that mere withdrawal of funds by one joint tenant established complete ownership in such joint tenant to the exclusion of any other joint tenants. That was an incorrect reading. Rather, *Nall* addressed whether the withdrawal of funds by one joint tenant terminated any rights she had to those funds. We held it did not, and by way of support pointed to § 23-32-1005(1)(B) and (2)(B), which provide for *payment* of the funds to any joint tenant who seeks to withdraw them. Under *Nall*, those sections established ownership rights in joint tenants, one of which was the right to withdraw funds — one of the incidents of ownership. We did not decide, nor did we address, whether by

withdrawing funds in joint tenancy one joint tenant acquired ownership to the exclusion of any other joint tenant.

For the reasons stated, the order of summary judgment is reversed and the case is remanded for a trial on the merits, including a determination as to the imposition of a constructive trust and to apportion the proceeds in accordance with intentions of the parties. *See* generally *Savage* v. *McCain, supra*; 8 ULA, Unif. Prob. Code, §§ 6-103 and 6-104 (1983), and Commentary thereto.

Reversed and remanded for further proceeding consistent with this opinion.