Ray SOUTH and Wilma South *v.* Berl A. SMITH, Special Administrator of the Estate of Nancy Walton

96-504                                                    934 S.W.2d 503

Supreme Court of Arkansas
Opinion delivered December 9, 1996
[Petition for rehearing denied February 3, 1997.]

*Arlon L. Woodruff,* for appellants/cross-appellees.

*Lyons, Emerson & Cone,* by: *Mike Cone,* for appellee/cross-appellant.

ROBERT H. DUDLEY, Justice. This is another in a long series of cases involving joint accounts in financial institutions. Nancy E. Walton had three children, Buel Walton, Lloyd Walton, and defendant-appellant Wilma South. Buel Walton died in 1982, leaving his daughters, plaintiffs Rita Venable and Monda Hutchison, as

his heirs. After Buel Walton's death, Nancy E. Walton opened joint bank accounts and purchased joint certificates of deposit as a joint tenant with her two remaining children, Lloyd A. Walton and Wilma South, in banks and savings and loan associations in Arkansas and Texas, as follows:

> 1. One certificate of deposit in the Southwest Savings, now known as Guaranty Federal Bank, FSB, a savings association located in Texas in the names of Nancy E. Walton, Lloyd A. Walton, and Wilma South as joint tenants with right of survivorship.

> 2. Six certificates of deposit in the MCNB Texas, now known as NationsBank, located in Texas, in the names of Nancy E. Walton or Lloyd A. Walton or Wilma D. South.

> 3. One certificate of deposit in Citizens Bank of Jonesboro in the names of Nancy E. Walton or Lloyd Walton or Wilma South as joint tenants with right of survivorship.

> 4. One certificate of deposit, one savings account, and one checking account in Home Federal Savings and Loan Association, now known as Capital Bank, in the names of Nancy E. Walton or Lloyd A. Walton or Wilma D. South as joint tenants with right of survivorship.

> 5. Two certificates of deposit in Pocahontas Federal Savings and Loan Association in the name of Nancy E. Walton or Lloyd A. Walton or Wilma D. South as joint tenants with right of survivorship.

> 6. Two certificates of deposit in the First State Bank of Arkansas in the names of Nancy E. Walton or Lloyd A. Walton or Wilma D. South as joint tenants with right of survivorship.

All of the accounts were opened with funds that belonged solely to Nancy E. Walton.

Lloyd Walton died on October 24, 1992, leaving a daughter, plaintiff Nancy Norwood as his heir. After Lloyd Walton's death, only Nancy E. Walton and defendant-appellant Wilma South remained as the survivors on the various joint accounts. Meanwhile, in July 1992, Nancy E. Walton had suffered a stroke and was moved to a nursing home. Appellant Wilma South cared for her mother

and wrote checks to pay her living expenses. Between November 5, 1992, and November 17, 1992, appellant Wilma South withdrew in excess of $315,000 from the accounts and deposited the funds in new accounts in her and her husband's names. Her husband is defendant-appellant, Ray South. Their daughter's name was also placed on at least one of the accounts. Appellant Wilma South did not tell her mother that she had removed the money from some of the joint accounts or that she had deposited it in joint accounts with her husband and daughter. The only account from which no money was withdrawn was a Home Federal account, but it was changed to reflect Nancy E. Walton, Ray or Wilma South, and Karen Moustafa as joint tenants with right of survivorship. Nancy E. Walton died just days after the money was withdrawn, on November 25, 1992. In December 1992, after her mother's death, appellant Wilma South cashed a $10,000 CD from NationsBank in Texas.

Monda Hutchison, Nancy Norwood, and Rita Venable, as the heirs of Buel and Lloyd Walton, filed this suit and alleged that a fiduciary relationship existed between Nancy E. Walton and defendant-appellant Wilma South and that South breached that relationship by withdrawing in excess of $300,000 from the accounts to which Nancy E. Walton was the sole contributor. They alleged that appellants' actions constituted conversion and that a constructive trust should be imposed declaring the money to belong to the estate of Nancy E. Walton. Appellants answered, denying that they breached a fiduciary duty and asserting that the parties had agreed that any one of them could withdraw the funds, and, if one of them died, the funds would become the property of the survivors. The trial court appointed Berl Smith as special administrator of the estate of Nancy E. Walton and substituted him as the plaintiff in the action.

At trial, there was testimony by various employees of the financial institutions that Nancy E. Walton understood the types of accounts, knew how she wanted the accounts styled, and chose the joint accounts with the right of survivorship. The trial court found that a fiduciary relationship existed between Nancy E. Walton and Wilma South and that, while appellant Wilma South was authorized to withdraw the funds from the accounts, she wrongfully converted the funds by placing them in an account to the exclusion of Nancy E. Walton. The trial court determined that the death of

Nancy E. Walton did not terminate her cause of action. The trial court ruled that a constructive trust was created and that Wilma South and Ray South held the proceeds for the benefit of Nancy E. Walton's estate. The trial court ordered Wilma South to pay to Nancy E. Walton's estate all of the proceeds withdrawn before Nancy Walton's death and permitted Wilma South to retain the funds not withdrawn until after her death. The trial court also ordered that "[p]laintiff's claim of $10,000.00 plus interest for the sum withdrawn from Nationsbank in Texas on December 24, 1992 is denied as Arkansas law applies to all accounts."

Wilma South and Ray South, on direct appeal, contend that the trial court erred in that part of the order requiring them to repay all of the funds withdrawn before the death of Nancy E. Walton, and the special administrator appeals from that part of the order providing that Arkansas law applies to the accounts opened in the Texas financial institutions. We reverse on both direct and cross-appeal.

We first address the direct appeal. The applicable statute, Ark. Code Ann. § 23-32-1005 (1987), in material part, provides:

> Checking accounts and savings accounts may be opened and certificates of deposit may be issued by any banking institution, or federally or state-chartered savings and loan association, in the names of two (2) or more persons, either minor or adult, or a combination of minor and adult. Checking accounts, savings accounts, and certificates of deposit shall be held and payable as follows:

> (1)(A) Unless a written designation to the contrary is made to the banking institution or federally or state-chartered savings and loan association, when a deposit has been made or a certificate of deposit purchased in the names of two (2) or more persons and in form to be paid to any of the persons so named, or the survivors of them, the deposit or certificate of deposit and any additions thereto made by any of the persons named in the account *shall become the property of those persons as joint tenants with right of survivorship*;

> (B) The deposit or certificate of deposit, together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to any of those persons or to the survivors after the death of any of those persons. The

payment shall be a valid and sufficient release and discharge of the bank or federally or state-chartered savings and loan association for all payments made on account of the deposit or certificate of deposit;

(2)(A) If the person opening the account or purchasing the certificate of deposit designates in writing to the banking institution or federally or state-chartered savings and loan association that the account or the certificate of deposit is to be held in joint tenancy or in joint tenancy with the right of survivorship, or that the account or certificate of deposit shall be payable to the survivor or survivors of the persons named in the account or certificate of deposit, then the account or certificate of deposit and all additions thereto shall be the property of those persons as joint tenants with right of survivorship.

(B) The account or certificate of deposit may be paid to or on the order of any one (1) of those persons during their lifetime unless a contrary written designation is given to the banking institution or federally or state-chartered savings and loan association, or to or on the order of any one (1) of the survivors of them after the death of any one (1) or more of them.

(C) The opening of the account or the purchase of the certificate of deposit in this form shall be conclusive evidence in any action or proceeding to which either the banking institution or federally or state-chartered savings and loan association or the surviving party is a party of the intention of all of the parties to the account or certificate of deposit to vest title to the account or certificate of deposit, and the additions thereto, in such survivor.

. . . .

(5) If an account is opened or a certificate of deposit is purchased in the name of two (2) or more persons, whether as joint tenants, tenants by the entirety, tenants in common, or otherwise, a banking institution or federally or state-chartered savings and loan association shall pay withdrawal requests, accept pledges of the account or certificate of deposit, and otherwise deal in any manner with the account or certificate of deposit. This may be done upon the direction

of any one (1) of the persons named therein, whether the other persons named in the account or certificate of deposit are living or not, unless one (1) of the persons named therein shall, by written instructions delivered to the banking institution or federally or state-chartered savings and loan association, designate that the signature of more than one (1) person shall be required to deal with the account or certificate of deposit.

Ark. Code Ann. §§ 23-32-1005(1) — (2)(C) & (5) (1987) (emphasis added).

■ In *Nall v. Duff*, 305 Ark. 5, 805 S.W.2d 63 (1991), we interpreted section 23-32-1005 to mean that the withdrawal of funds from a joint account with right of survivorship before the death of the sole contributor, as in the case at bar, did not destroy the survivorship right in the survivor. In that case, Nall cared for her neighbor, Duff, for many years. Duff opened a checking account, and both Duff and Nall signed the signature card, which provided, "Joint and Several Checking Account, Payable to Either or Survivor." 305 Ark. at 6, 805 S.W.2d at 63. Duff also opened a money market checking account, and both Duff and Nall signed the signature card, which provided, "Joint Account—With Survivorship" and "Such an account is issued in the name of two or more persons. Each of you intend that upon your death the balance in the account ... will belong to the survivor(s)." *Id.* Duff later purchased a certificate of deposit. Both Duff and Nall signed the signature card, which stated that it was a joint certificate and that the signataries acknowledged that the depositor intended that the account balance at the time of the death of any party to the account would be the property of the surviving parties to take as a surviving joint tenant. *Id.* Duff suffered a stroke and until her death several months later was unable to speak or recognize her visitors. After Duff's stroke, but before her death, Nall withdrew $83,383.44 from the joint accounts and cashed the certificate of deposit for $23,192.53 and placed the money in a revocable living trust in a bank in Missouri. Nall was the grantor and trustee of the trust and Duff was the life beneficiary. The funds were for the care and support of Duff during her lifetime, and those remaining upon her death were to go to Nall as the grantor. Nall paid Duff's expenses from the account, as well as her attorney's fees for drawing up the trust instrument and representing her in the case. The administrator

of Duff's estate filed suit claiming that Duff was incompetent at the time of establishing the accounts and that Nall was in a fiduciary relationship with her; therefore, the funds were in trust for Duff. The trial court ordered Nall to pay the total amount withdrawn to the estate, plus interest, minus expenditures on behalf of Duff. The trial court ruled that the provisions of Ark. Code Ann. § 23-32-1005 (1987) did not apply because the benefits provided to Nall as a joint tenant terminated when Nall withdrew the money and cashed the certificate of deposit.

We reversed and held that the trial court erred in not applying section 23-32-1005. We quoted the introduction and sections (1)(A), (1)(B), and (2)(A) — (C), and stated:

> In *Hall v. Superior Fed. Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990), we applied this section to determine the intent of the parties in establishing joint accounts with right of survivorship. There, we said that Ark. Code Ann. § 23-32-1005 (1987) applies to checking accounts, savings accounts, and certificates of deposit issued by a banking institution or a state-chartered savings and loan association. We held that the language of Ark. Code Ann. § 23-32-1005(2)(A) and (C), quoted above, is clear and provides *conclusive evidence* of the intention of the parties to create a joint tenancy with the right of survivorship when an account is opened in compliance with the provisions of these subsections. Likewise, in the present case, we find the provisions of Ark. Code Ann. § 23-32-1005(1)(B) and (2)(B), quoted above, are clear and establish the ownership rights of persons named in a joint account or certificate of deposit opened in compliance with the provisions of subsections (1)(A) or (2)(A).
>
> When Eva Duff opened the checking accounts and purchased the certificate of deposit in her and Kay's names, she designated in writing on the signature cards that the accounts were payable to the survivor. This is in compliance with the provisions of Ark. Code Ann. § 23-32-1005(1)(A) and (2)(A), under which the opening of an account or purchasing of a certificate of deposit in the name of two or more persons designating that the account or certificate of deposit shall be payable to the survivor of the persons named creates a joint tenancy with the right of survivorship. Subsections (1)(B) and (2)(B) provide that the account or certifi-

> cate of deposit may be paid to any one of the persons named on the account during their lifetimes, unless a written designation is given to the contrary. The accounts and certificates of deposit at issue here contained no contrary designation. In fact, the signature cards for the money market checking account and the certificate of deposit specified that the funds on deposit could be paid to the persons named on the cards at any time and upon "a properly executed written order." Thus, under the code, appellant had the right to withdraw the money from the accounts.

*Nall* v. *Duff*, 305 Ark. at 9-10, 805 S.W.2d at 65 (emphasis in the original).

■ Under *Nall* v. *Duff*, appellant Wilma South was a joint tenant with right of survivorship in the accounts and certificates of deposit. As a joint tenant, she had the right to withdraw the money from the accounts and cash the certificates of deposit. Her ownership in the proceeds from the joint accounts and certificates of deposit continued, while Nancy E. Walton's right of ownership in the funds from the accounts terminated at her death.

■ In *Dent* v. *Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995), we explained that the tort of conversion is committed when "a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights." *Id.* at 262, 909 S.W.2d at 305 (citation omitted). In applying *Nall* v. *Duff* and *Dent* v. *Wright* to the present case, the trial court ruled that Wilma South wrongfully converted funds in the joint accounts and the joint certificates of deposit. However, she was a cotenant with ownership rights, and withdrawal of the funds was consistent with her ownership rights. Her act of withdrawing the funds did not end her survivorship interest in the proceeds of the funds.

■ The trial court held that, even though one has a right to withdraw funds from a joint bank account, a joint tenant may not, by withdrawing funds in a joint tenancy, acquire ownership to the exclusion of the other joint tenant, *see Dent* v. *Wright*, 322 Ark. 256, 262, 909 S.W.2d 302, 305 (1995), and that when one withdraws in excess of his moiety, he is liable to the other joint tenant for the excess withdrawn. *Id.* at 263, 909 S.W.2d at 305. While that is a correct statement of law, it is not applicable to the facts of this case. Here, Wilma South did not acquire ownership to the exclusion of

Nancy E. Walton by withdrawing the funds. While she did not place the funds in a trust, as was done in *Nall* v. *Duff*, she testified that she would have used the money for her mother's benefit and that the reason she did not so do was that her mother died almost immediately after she withdrew the money.

█ The trial court additionally relied on *Hogan* v. *Hogan*, 313 Ark. 374, 855 S.W.2d 905 (1993), in deciding this case. In that case the plaintiff-appellant was an elderly man who purchased a certificate of deposit with his own funds in the name of himself and his son and daughter, as joint tenants with the right of survivorship. The son redeemed the certificate of deposit for a check payable to himself or his sister, the other joint tenant. The father filed an action asserting that the funds had been converted and that he had placed the names of his children on the certificate of deposit for purposes of survivorship rights at his death. The son and daughter moved for summary judgment on the basis that a joint tenant can redeem a certificate of deposit for the entire amount. We held that under Ark. Code Ann. § 23-32-1005(1)(B) and (2)(B) funds in a joint tenancy account can be paid to a joint tenant, but that those provisions "do not determine ownership to the exclusion of other joint tenants." *Id.* at 378, 855 S.W.2d at 908. We then quoted from § 23-32-1005(2)(C) and stated:

> This section recites that compliance with the statute will be conclusive evidence of the parties' intentions that the *surviving party* is entitled to the funds. It does not say that compliance with the statute conclusively vests ownership of the proceeds of the account or CD in whoever happens to withdraw it. The surviving parties in any given case would be those parties remaining after one or more joint tenants had died. This section does not address the rights of a joint tenant who merely withdraws the funds, nor does it deal with the rights of joint tenants among themselves.

313 Ark. at 379, 855 S.W.2d at 908 (emphasis in the original). We further stated there was nothing in the statutes governing the rights of the joint tenants among themselves. We discussed with approval *Savage* v. *McCain*, 21 Ark. App. 50, 728 S.W.2d 203 (1987), in which the court of appeals affirmed the imposition of a constructive trust by the chancellor in a case in which one joint tenant withdrew all of the funds in a joint account and refused to account to the other joint tenant. The court then stated that the rule in other

jurisdictions is that "though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the other joint tenant for the excess so withdrawn." 313 Ark. at 380, 855 S.W.2d at 909 (citations omitted). In *Hogan v. Hogan*, we said that the trial court had misinterpreted *Nall v. Duff* and stated that "*Nall* addressed whether the withdrawal of funds by one joint tenant terminated any rights she had to those funds. We held it did not, and by way of support pointed to § 23-32-1005(1)(B) and (2)(B), which provide for *payment* of the funds to any joint tenant who seeks to withdraw them." *Id.* (emphasis in the original).

■ *Hogan v. Hogan* is distinguishable from the case at bar in a very important way: in *Hogan v. Hogan*, the dispute was between living joint tenants, but, in the present case, appellant Wilma South is the survivor of the joint tenants in all of the accounts. Here, there is no dispute between living joint tenants. This distinguishing factor places this case under the principle of *Nall v. Duff*, where we stated that the withdrawal of funds by one joint tenant did not destroy her rights to those funds.

■ The present case is not wholly in line with the facts of *Nall v. Duff* in that appellant Wilma South did not place the funds withdrawn from the accounts in a trust for Nancy E. Walton. However, Wilma South testified that the money that she withdrew was to be used for her mother, but that she never used any of it for that purpose since her mother died so soon after she withdrew the money. A constructive trust for the benefit of Nancy E. Walton might well have imposed on the proceeds of the accounts during the lifetime of Nancy E. Walton, but she died before this action was filed and there was no showing that Wilma South deprived Nancy E. Walton of anything she desired. Upon Nancy E. Walton's death, her rights in the joint funds go to the survivor in the joint account, appellant Wilma South. The fact that appellant Wilma South exercised her right to withdraw funds from the joint accounts a few days before Nancy Walton's death did not terminate her survivorship right in the property. Nancy E. Walton deliberately opened the accounts as joint accounts with the right of survivorship. Joint accounts are often used as substitutes for testamentary disposition, and people who establish such accounts must be able to know with certainty that the courts will follow their desired disposition of their property.

■ In the cross-appeal, the Nancy E. Walton estate contends

that the trial court erred in refusing to apply Texas law to the accounts in Texas. The argument is well taken. The creation of an account in a financial institution is a contract, and absent some provision in the contract, the general rule is that the construction and validity of a contract are governed by the law of the place where the contract is made. *White* v. *Toney*, 37 Ark. App. 36, 823 S.W.2d 921 (1992). The court of appeals in *White* v. *Toney* was not unmindful of the exception to the general rule that we set out in *Morris* v. *Cullipher*, 306 Ark. 646, 816 S.W.2d 194 (1991). There, we held that Arkansas law, the law of the domicile of the decedent, should be applied, as opposed to Texas law, where, just as here, the account was opened. But, as the court of appeals noted, our choice of law in *Morris* v. *Cullipher* was based on the fact that marital property was involved, and we held that there should be a single basis for the ownership of marital property. Reversed on direct appeal; reversed on cross-appeal.

JESSON, C.J., concurring.

CORBIN, J., dissenting.

BRADLEY D. JESSON, Chief Justice, concurring. My concurrence concerns our decision on direct appeal. I agree that, under the particular circumstances of this case, we should reverse and remand. However, I am of the opinion that there are other, similar circumstances in which our decision should not be applicable. In the case before us, Nancy Walton died without having the opportunity to personally file suit or in any way assert her right to co-ownership of the funds. The first time her right of ownership in the funds was asserted was after her death. I would limit our holding to that set of circumstances. If Mrs. Walton had discovered, prior to her death, the withdrawals made by Wilma South, and had filed suit or, in some tangible manner, made an attempt to recover the amount withdrawn by Wilma South in excess of her moiety, then Mrs. Walton's cause of action should survive her death.

DONALD L. CORBIN, Justice, dissenting. I dissent because I am concerned with the path this court is taking in reviewing cases involving joint-tenancy bank accounts where one of the joint tenants is deceased. What concerns me is that our case law has now focused narrowly on the applicable banking statute, Ark. Code Ann. § 23-32-1005 (1987), without any regard for the deceased's wishes outlined in a will as to how his or her property shall be

divided. Such disregard is particularly troubling in this case, where Nancy Walton died testate and her will specifically devised and bequeathed all of her property in three equal shares to the following persons: (1) Lloyd Walton, her (now deceased) son, (2) Appellant Wilma South, her daughter, and (3) the children of her deceased son Buel Walton, namely Monda Hutchison and Rita Venable.

I have no doubt that the majority opinion correctly reflects our previous decisions as well as the statutory law. I write because I am concerned that we are contributing to a false sense of security for those persons who have enough foresight to document their intentions as to the distribution of their property in a last will and testament. Those persons who follow legal advice and encouragement and obtain a legally binding will no doubt believe that when they die, their will shall be done. It is unreasonable for this court or the General Assembly to rob those persons of their security and reliance upon their documented intentions simply because part of their property lay in a bank account that they share with a close friend or family member.

Many elderly persons, fearing that they may reach a point where they can no longer care for themselves, establish joint bank accounts with a child for the purpose of insuring that while they are living, their affairs will be taken care of adequately. Many of those same persons will have prepared wills distributing their property amongst all their family and would probably be shocked to discover that after their deaths their wills were not even considered by the courts in determining that the entire proceeds of the joint bank account were awarded solely to the child whose name appeared as joint tenant on the account signature card.

I am further troubled by the fact that in this case, Appellant Wilma South withdrew the funds from the bank accounts while Mrs. Walton was living. Arguably, this court would have protected Mrs. Walton's rights to the proceeds of the bank accounts while she was living. Why then does that protection not extend to her estate? The fact that Mrs. Walton died does not change the fact that her daughter took what did not belong to her. By its holding, the majority appears to be sanctioning Appellant's actions in depriving Mrs. Walton of the benefit of those funds during her lifetime.

For all of the above reasons, I respectfully dissent.