Mr. Robert H. "Bunny" Adcock, Jr. State Bank Commissioner 400 Hardin Road, Suite 100 Little Rock, Arkansas 72211-3502
Dear Mr. Adcock:
I am writing in response to your request for an opinion concerning the application of the newly enacted "Arkansas Uniform Simultaneous Death Act," Act 74 of 2005. Specifically, your questions involve the application of this Act in the context of bank accounts with multiple owners with the right of survivorship. Your questions are as follows:
 With regard to accounts with multiple owners with right of survivorship, if each owner has the contractual right to withdraw the entire account at any time (including following the death of an owner), does the Arkansas Uniform Simultaneous Death Act have any impact on withdrawals made by a surviving owner following the first death of an owner?
 Stated another way, if a surviving owner of such an account withdraws funds between the death of the first owner to die and the death of such a surviving owner (whose death occurs within 120 hours of the death or the first owner to die), will the funds withdrawn by such surviving owner be subject to any rights of the estate or beneficiaries of the first owner to die?
RESPONSE
This is an excellent question. Although I have not been able to find any legal precedent directly on point with regard to the new Act, in my opinion the answer to each of the questions you pose above is "no." Clarification by the Arkansas Supreme Court after the effective date of the new act, however, would be necessary to definitively resolve the issue.
Act 74 of 2005 adds an additional subchapter to the Arkansas Code comprising the "Arkansas Uniform Simultaneous Death Act (2005)." The new act, which does not become effective until January 1, 2006 (see Act 74, § 1, under A.C.A. § 28-10-211), repeals the current "Uniform Simultaneous Death Act" or "USDA," which was originally adopted in Arkansas in 1941 and is currently codified at A.C.A. §§ 28-10-101 to -111 (Repl. 2004). As its title implies, the new act is a "uniform" act and was put forth by the National Conference of Commissioners on Uniform State Laws ("NCCUSL"). The act contains provisions addressing the devolution of property in certain contexts where the deaths of two parties occur in close proximity. As stated in a summary of the uniform law on the NCCUSL's website, the new "USDA creates a default rule that one must survive another by 120 hours to avoid disputes caused by simultaneous or quickly successive deaths of persons between whom property or death benefits pass on the death of one survived by the other." See,
http://www.nccusl.org/nccusl/DesktopDefault.aspx (under "Simultaneous Death Act."
This new "120 hour" rule is in contrast to the earlier version of the USDA. The National Conference of Commissioners had occasion to note the history and purposes of the old version of the USDA and the newer version in its prefatory note to its final draft of the uniform law:
 The original USDA provided that, when there is no sufficient evidence that two individuals died otherwise than simultaneously, each individual's property is distributed as if he or she survived the other. The advantages of this approach are that each individual's property passes to that individual's relatives rather than to the other individual's relatives and that double administrative costs are avoided because property does not pass from one estate to another estate.
 This 1991 revision of the USDA does not alter the result of the original Act. Rather, it expands the narrow application of the original Act so that, as revised, it no longer is restricted to situations in which there is no sufficient evidence that two individuals died otherwise than simultaneously.
* * *
 This 1991 version of the USDA, then, extends the application of the original Act to situations in which there is sufficient evidence that one of the individuals survived the other one, but the period of survival was insubstantial. This 1991 version originated in Sections 2-104 and 2-601 of the Uniform Probate Code of 1969, which imposed a 120-hour requirement of survival for intestate and testate succession, and in the revisions of Article I and II of the Uniform Probate Code that were approved in 1990 and 1991, which extend the 120-hour requirement of survival to deeds creating joint tenancies and tenancies by the entirety and to provisions of other" governing instruments" (as defined in Section 1 of this Act) that relate to an individual surviving an event, including the death of another individual. A clear and convincing evidence standard of proof of survival by 120 hours is imposed throughout in order to reduce litigation and to resolve close cases in favor of non-survival.
* * *
 Section 7 of the 1991 version is a new section made desirable by the extension of a 120-hour requirement of survival to all governing instruments, such as life-insurance policies, and to co-ownership arrangements with right of survivorship, such as joint tenancies and joint checking accounts. Section 7 grants protection to payors and other third parties who, before receiving written notice of a claimed lack of entitlement under the Act, pay off or in other ways rely on a survivor's apparent entitlement to succeed to property.
As adopted in Arkansas by Act 74 of 2005, the relevant section for purposes of your question is § 28-10-204, which provides as follows:
 28-10-204. Co-owners with right of survivorship; requirement of survival by one hundred twenty 120 hours.
Except as provided in § 28-10-206,[1] if:
 (1) It is not established by clear and convincing evidence that one (1) of two (2) co-owners with right of survivorship survived the other co-owner by one hundred twenty (120) hours, one-half (1/2) of the property passes as if one had survived by one hundred twenty (120) hours and one-half (1/2) as if the other had survived by one hundred twenty (120) hours; and
 (2) There are more than two (2) co-owners and it is not established by clear and convincing evidence that at least one (1) of them survived the others by one hundred twenty (120) hours, the property passes in the proportion that one bears to the whole number of co-owners.
 Your question posits a situation in which one owner of such a joint account (the "first owner"), dies and after the death of the first owner, a surviving owner (the "second owner"), withdraws funds from the account, but then also dies — within 120 hours of the death of the first owner. I assume this factual scenario has reference to a situation in which the first and second owners either were not both involved in what is called a "common disaster,"[2] or if they were, that the second owner remained physically able to withdraw funds from a joint account before his ensuing death. I assume the scenario you describe would occur fairly rarely. Your question is whether under the USDA, the funds withdrawn by the second owner during this period will "be subject to any rights of the estate or beneficiaries of the first owner to die." The question turns upon whether § 28-10-204 above will apply so that "the property passes" proportionally to each (and thus to the heirs of each), notwithstanding the intervening withdrawal, or whether the provisions of the section above are inapplicable to the withdrawn amounts and the first owner's heirs will have no claim thereto.[3]
I have not found any case law that addresses this precise question under the new USDA. Of course, the Act is not yet effective in Arkansas and as a consequence, no Arkansas cases have been decided under it. I have also not found any analogous case law on this point from other jurisdictions that have adopted the new uniform act. I will note, however, that the commentary to the uniform act, as expressed by the National Conference of Commissioners on State Laws, recites the following under Section 4 (the section that A.C.A. § 28-10-204 reproduces verbatim):
 This section applies to property or accounts held by co-owners with right of survivorship. As defined in Section 1, the term "co-owners with right of survivorship" includes multiple-party accounts with right of survivorship. In the case of a joint checking account registered in the name of the decedent and his or her spouse with right of survivorship, the 120-hour requirement of survivorship imposed by this section will not interfere with the surviving spouse's ability to withdraw funds from the account during the 120-hour period following the decedent's death if the state has a facility-of-payment statute such as Section 6-222(1) of the Uniform Probate Code.[4] A state without such a facility-of-payment statute should consider enacting one in conjunction with the enactment of this Act.
The comment above does not expressly address the subsequent death, within 120 hours of the decedent's death, of the joint owner who withdrew the funds (the surviving spouse above), or whether the first owner's estate would have any claim over such funds in that circumstance. It does indicate, however, that the right to withdraw the funds within 120 hours of the death of a joint owner is not affected by the USDA at least where a separate state statute authorizes the withdrawal.
Arkansas has not adopted the Uniform Probate Code referred to in the comment above. See generally, Lynn Foster, The Arkansas Trust Code: GoodLaw for Arkansas, 27 U.A.L.R.L.J. 191, at 193 (Winter 2005). There is thus no probate provision in Arkansas exactly like the one referred to in the commentary above. There is a separate Arkansas statute, however, addressing the right to withdraw funds from a joint account with right of survivorship. Section 23-47-204 of the Arkansas Code, a part of the "Arkansas Banking Code of 1997," provides in relevant part as follows:
23-47-204. Multiple-party deposits.
 (d)(1) A joint tenant with right of survivorship deposit account may be paid to or on the order of any one (1) of the depositors during his or her lifetime unless a contrary written designation, in a form acceptable to the bank, is given to the bank, or to or on the order of any one (1) of the survivors of them after the death of any one (1) or more of them.
 (2) A tenancy by the entirety deposit account may be paid to or on the order of either depositor during his or her lifetime, or to or on the order of the survivor after the death of one (1) of them.
Emphasis added.
It is clear, in my opinion, under A.C.A. § 23-47-204(d) above, that the second owner in your described scenario has a right to withdraw funds in the joint account after the death of the first owner. In my opinion the USDA has not altered the impact of this provision of the Banking Code on the right to withdraw funds within the 120-hour period following the death of one joint owner. Specifically, in my opinion the word "survivors" used in 23-47-204(d)(1) above is still properly construed in its ordinary sense, rather than having been impliedly amended to require a 120-hour survival requirement before a joint owner is eligible to withdraw funds as a "survivor." The USDA does not expressly address the right of joint tenants to withdraw funds. The only mention of this right is in the commentary to the Uniform Act, which notes that the right to withdraw funds is preserved to other joint tenants in the 120-hour period assuming the existence of a "facility of payment" statute, citing as an example a provision of the Uniform Probate Code. Although we do not have the exact provision mentioned, which expressly removes any requirement that a withdrawing party "survive" other parties (see fn. 4, supra), we do have A.C.A. § 23-47-204 above, which grants the right of withdrawal after the death of another joint party. I cannot conclude, that the new USDA impliedly amends A.C.A. § 23-47-204 above to require a 120-hour survival requirement prior to the withdrawal of funds. Implied amendments, like implied repeals, are of course not favored in the law. It has been stated in this regard that:
 Previous statutes may be amended by implication [footnote omitted] necessarily resulting from subsequent legislation; but such implied amendments are not favored.
 In 59 C.J. 857, in speaking of implied amendments to statutes, this language appears:
 "It has been very generally stated that amendments of statutes by implication are not favored and will not be upheld in doubtful cases. Ordinarily, the legislature's enactment of a law will not be held to have changed a statute that it did not have under consideration at the time of enacting such law; and implied amendments cannot arise merely out of supposed legislative intent in no way expressed, however necessary or proper it may seem to be. An amendment by implication can occur only where the terms of a later statute are so repugnant to an earlier statute that they cannot stand together."
Pruitt v. Sebastian County Coal Mining Company, 215 Ark. 673, 684,222 S.W.2d 50 (1949).
Nothing in the relevant section of the new USDA (A.C.A. § 28-10-204, indicates an intention to regulate or restrict a joint tenant's ability to withdraw funds from a joint account after the death of a joint tenant, at least absent a written designation to the contrary. See
A.C.A. § 28-10-207 (rendering a payor liable for a payment made after receiving written notice of a claimed lack of entitlement and authorizing the payor in that instance to pay or transfer amounts held to the probate court). The relevant provision of the Arkansas Banking Code, A.C.A. §23-47-204 expressly permits the withdrawal of funds after the death of a joint tenant, again, absent a written designation to the contrary.
A right to withdraw funds in a joint account from a bank, however, is not always tantamount to a perfect right to retain the funds against all other joint owners.
Some background discussion of the common law regarding withdrawals from joint accounts may be helpful before proceeding further to a discussion of the impact of the new USDA on the right to withdraw and retain funds from a joint account.
The Arkansas Supreme Court discussed the general law surrounding the issue in Hogan v. Hogan, 313 Ark. 374, 855 S.W.2d 905 (1993), as follows:
 There is no question that under 23-32-1005 [precursor to A.C.A. § 23-47-204, which contained language similar to 23-47-204(d)], any joint tenant has the right to withdraw the entire amount in a joint tenancy account. Section 23-32-1005(1)(B) and (2)(B). Those provisions, however, provide only that the funds may be paid to the joint tenant. They do not determine ownership to the exclusion of other joint tenants.
* * *
 As to rights in the property as among joint tenants, there is nothing in 23-32-1005 that governs that issue, nor do we find it elsewhere in our statutes. Therefore it is necessary to turn to other sources for guidance.
* * *
 Looking to other jurisdictions we find that in similar situations the courts have . . . relied on the law of joint tenancy, and the rule is quite clear:
 "Even though a joint tenant may withdraw the entire fund, one who does withdraw funds in excess of his moiety is liable to the other joint tenant for the excess so withdrawn."
* * *
 While our Code does not define substantive rights among joint tenants, it recognizes the common law rights of joint tenants, for it provides for an accounting between them. Ark. Code Ann. 18-60-101 (1987) states:
 "(b) Joint tenants, tenants in common, and coparceners in any real or personal estate, may maintain civil actions against their cotenants who receive as bailiffs more than their due proportion of the benefits of the estate. [Our emphasis.]"
Hogan v. Hogan, 313 Ark. 374, 378-380, 855 S.W.2d 905 (1993), quotingLeffew v. Mayes, 685 S.W.2d 288 (Tenn.App. 1984).
Although the court in the later case of South v. Smith, 326 Ark. 774,934 S.W.2d 503 (1996) reaffirmed this statement, it held it inapplicable to the facts in South:
 The trial court held that, even though one has a right to withdraw funds from a joint bank account, a joint tenant may not, by withdrawing funds in a joint tenancy, acquire ownership to the exclusion of the other joint tenant, see Dent v. Wright, 322 Ark. 256, 262, 909 S.W.2d 302, 305 (1995), and that when one withdraws in excess of his moiety, he is liable to the other joint tenant for the excess withdrawn. Id. at 263, 909 S.W.2d at 305. While that is a correct statement of law, it is not applicable to the facts of this case.
 Id. at 782.
The statement above was not applicable to the facts in South because in that case a daughter who withdrew substantial funds from a joint account held with her mother a few days prior to the mother's death "testified that she would have used the money for her mother's benefit and that the reason she did not so do was that her mother died almost immediately after she withdrew the money." Id. at 783. See also Nall v. Duff,305 Ark. 5, 805 S.W.2d 63 (1991) (joint tenant who was next-door neighbor of other joint tenant could, under former A.C.A. § 23-32-1005, withdraw entire amount in joint account and place it in trust for her incapacitated neighbor and after death of neighbor, neighbor's estate was not entitled to any portion of the funds). The court distinguishedHogan, above by stating that:
 Hogan v. Hogan is distinguishable from the case at bar in a very important way: in Hogan v. Hogan, the dispute was between living joint tenants, but, in the present case, appellant Wilma South is the survivor of the joint tenants in all of the accounts. Here, there is no dispute between living joint tenants. This distinguishing factor places this case under the principle of Nall v. Duff, where we stated that the withdrawal of funds by one joint tenant did not destroy her rights to those funds.
 Id. at 784.
Thus, under the common law, where a joint tenant with the right of survivorship withdraws funds from a joint account, he is liable to otherjoint tenants for the excess withdrawn. He is not, however, under the common law, liable to the heirs of a deceased joint tenant for such excess. The right of the decedent to the funds in a joint account with the right of survivorship ordinarily dies with him. Id. at 782. Upon the decedent's death, his rights in the joint funds go to the survivor in the joint account. Id. at 784.
The question you pose is whether the new "Arkansas Simultaneous Death Act (2005)" will change this state of the law in cases in which one joint owner dies, and another joint owner both withdraws funds from the account and then also dies within the same 120-hour period.[5] The question is whether the new USDA gives the first owner's heirs or estate any right to a portion of the funds.
In my opinion an answer to this question first requires reference to the language of the statute itself. The applicable provision, A.C.A. §28-10-204(1), states that if "[i]t is not established . . . that one (1) of two (2) co-owners with right of survivorship survived the other . . . by one hundred twenty (120) hours, one-half (1/2) of the property passes
as if one had survived . . . and one-half (1/2) as if the other had survived. . . ." (Emphasis added).
In the scenario you have posited, it cannot be established that one co-owner survived the other by the requisite period. You state that they both died within a 120-hour period. This fact triggers the operative language "one-half (1/2) of the property passes as if one had survived. . . ." The question is how an intervening withdrawal of funds affects the applicability of the language contained in this phrase. In my opinion the construction of the words "the property" and "passes," are important in answering your question. Do the words "the property" refer only to property still remaining in the joint account? Or can these words also refer to funds previously withdrawn from the joint account and placed elsewhere by the second joint tenant after the death of the first? Similarly, the construction of the word "passes" is relevant. Does this word suggest that the subsection applies only to distribution to the heirs of deceased joint tenants and not to the right of a joint tenant to himself withdraw and retain funds after the death of the first owner?
I have found no precedent addressing this issue. In my opinion, however, the answer to each of your questions is in all likelihood "no," the USDA does not apply and the funds withdrawn will not be subject to the rights of the estate or beneficiaries of the first owner to die. A ruling by the Arkansas Supreme Court would be necessary to definitively resolve the question, however.
Upon the death of the first owner, the second owner had a right to withdraw the funds. Under existing Arkansas common law principles, the second owner is not liable to the estate of the first owner for the amounts withdrawn (because the first owner's survivorship right died with him). Cf. South v. Smith, supra. In my opinion, this state of the law has not been changed by USDA under the circumstances you describe.
It has been stated by the Arkansas Supreme Court that:
 Although the General Assembly has the power to alter the common law, a legislative act will not be construed as overruling a principle of common law unless it is made plain by the act that such a change in the established law is intended. Hartford Ins. Co. v. Mullinax, 336 Ark. 335, 984 S.W.2d 812 (1999).
Thompson v. Bank of America, 356 Ark. 576, 584, 157 S.W.3d 174 (2004)quoting Books-a-Million v. Arkansas Paint. and Spec., 340 Ark. 467, 470,10 S.W.3d 857 (2000). See also Kralicek v. Chaffey, 67 Ark. App. 273998 S.W.2d 765 (1999); Hartford Insurance Company v. Mullinax, 336 Ark. 335984 S.W.2d 812 (1999); White v. State, 290 Ark. 130, 136,717 S.W.2d 784, 787 (1986) (quoting Starkey Constr., Inc. v. Elcon, Inc.,248 Ark. 958, 457 S.W.2d 509 (1970)); and Barrentine and Ives v. State,194 Ark. 501, 108 S.W.2d 784 (1937).
Rather than a plain intention appearing in the new USDA to change the law on this point, it seems that the contingency of a second owner withdrawing funds after the first owner's death and then dying himself within the 120-hour period was simply not contemplated. Nothing in the Act speaks to the possibility of an intervening withdrawal of funds by one of the owners where both owners die within 120 hours. The language used in the applicable statute, "the property passes," appears to refer to the property remaining in the joint account and does not appear to address one joint tenant's right to withdraw and retain funds (for however short a period), after the death of the other joint tenant. Absent a clear intention in this regard, I cannot conclude that the new USDA changes the common law rule that the withdrawing second owner is not responsible to the estate or beneficiaries of the first owner.
Moreover, the policy and purpose of the USDA would not appear to be furthered by application of the Act in this instance. At least one goal of the new USDA (as well as the former USDA), was to avoid "double administrative costs" associated with property passing from one estate to another estate. See Prefatory Note to Uniform Simultaneous Death Act, available at www.law.upenn.edu/bll/uk/usda/199/FinalAct.htm. This goal has little applicability to assets such as joint accounts with the right of survivorship, which by their nature pass outside of probate. No "double administration" is present with such accounts.
An additional goal of the new USDA's 120-hour survival requirement was to avoid the "gruesome medical evidence" that was sometimes necessary to prove that one decedent had survived another "by an instant or two." Id.
In the scenario you posit, however, where the surviving joint tenant has the physical ability to withdraw funds and where both tenants clearly died within the 120-hour period, morbid questions of survivorship would presumably not be involved and application of the new Act would not operate to alleviate any such concerns. The issue in such case is one of law, not one of fact.
A final goal of the USDA has been described as being to "protect the decedent's presumed intent by preventing the other person's relatives from taking." See Comment, Estates and Probate — Ellis v. Ellis:Survivorship Properties in Tennessee Remain Unaffected by the 120 HourProvision of the Tennessee Uniform Simultaneous Death Act, 33 U. Mem. L. Rev. 681, 689 (Spring 2003). This goal is discussed by another legal commentator as follows:
 "The [new USDA] moves from a simultaneous death provision to a time provision. This feature of USDA '91, which might be called its primary thesis, assumes that the typical testator would ordinarily prefer a gift to pass to testator's secondary beneficiary, even though the primary beneficiary actually survives, if that period of survivorship is so short that the primary beneficiary has neither the time to personally enjoy the gift nor the opportunity to make any after-the-fact disposition thereof." USDA '91 assumes that a primary beneficiary who dies less than five days after testator (which time may have been spent in intensive care) is unlikely to have personally benefited from, or made any after-the-fact disposition of, the property in question.
J. Rodney Johnson, The New Uniform Simultaneous Death Act, 8-JUN Prob. Prop. 22 (May/June, 1994) (emphasis added).
In the factual scenario you posit, the primary beneficiary not only had the time and opportunity to make an "after the fact disposition," he or she presumably did so by withdrawing funds from the account. The "assumption" of the new USDA referred to above is thus contradicted by the factual scenario you describe. It is difficult to conclude that the goals of the new USDA are furthered by its application in this instance.
In my opinion, therefore, for all the foregoing reasons, the answers to your questions are "no," and "no." As noted, above, however, the new act (Act 74 of 2005) is not yet effective and interpretation by the Arkansas Supreme Court will be necessary to definitively resolve the issue you pose.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] There are a number of exceptions listed in 28-10-206. I assume, for purposes of your question, that none of the exceptions is applicable.
[2] The language of the USDA is not strictly limited to situations in which parties die in a "common disaster" and could have applicability to instances in which owners die of independent natural causes. Cf.generally, Smith v. Smith, 229 Ark. 579, 591, 317 S.W.2d 275 (1958).
[3] Your question is not entirely clear as to whether there are only two owners of the account you describe or perhaps more. I assume your question refers to only two owners and I further assume that there is no relevant language in any account documents that would otherwise dictate the answer to the question.
[4] This Uniform provision provides as follows: "A financial institution, on request, may pay sums on deposit in a multiple-party account to:
 (1) one or more of the parties, whether or not another party is disabled, incapacitated, or deceased when payment is requested and whether or not the party making the request survives another party; or
 (2) the personal representative, if any, or, if there is none, the heirs or devisees of a deceased party if proof of death is presented to the financial institution showing that the deceased party was the survivor of all other persons named on the account either as a party or beneficiary, unless the account is without right of survivorship under Section 6-212."
[5] Presumably, nothing in the existing Uniform Simultaneous Death Act (originally adopted in 1941, see A.C.A. § 28-10-101 to -112), would change the state of the common law, because the older Act's provisions contain no 120-hour requirement and apply only in cases in which "there is no sufficient evidence that two (2) joint tenants . . . died otherwise than simultaneously. . . ." See A.C.A. § 28-10-103. Presumably, sufficient evidence could be presented to establish that a joint tenant with the physical wherewithal to withdraw funds from a joint account after the death of the first joint tenant survived the first owner.