Nancy BRASEL *v.* ESTATE OF Othar HARP and
Newton County Bank

94-10                                          877 S.W.2d 923

Supreme Court of Arkansas
Opinion delivered June 20, 1994
[Rehearing denied July 18, 1994.]

*Martin Law Firm, P.A.,* by: *Thomas A. Martin,* for appel-
lant.

*Peter De Stefano,* for appellee Newton County Bank.

*Adams, Nichols & Evans*, by: *Donald J. Adams*, for appellee Estate of Harp.

DONALD L. CORBIN, Justice. Appellant, Nancy Brasel, appeals an order entered by Newton Chancery Court denying her claims against appellees, the Estate of Othar Harp and Newton County Bank. Appellant, Othar Harp's neighbor, had been added to Harp's checking account to assist him in paying his bills. Appellant was a joint tenant on this account with Mr. Harp until his guardian withdrew all the funds in the account and set up a guardianship account. Appellant questions whether the guardian can rightfully close a bank account held by the ward and another party as joint tenants with the right of survivorship. Appellant also questions whether the bank can rightfully release funds to the guardian. We have jurisdiction of this case as it requires statutory interpretation. Ark. Sup. Ct. R. 1-2(a)(3).

In 1989, Othar Harp, an elderly widower, changed his Newton County Bank account from sole ownership to joint tenancy with a right of survivorship when he added appellant to write checks for him. In January 1992, Mr. Harp was found incompetent, and his son, Sam Harp, was appointed guardian. The day guardianship letters were issued, the son closed that account and placed the funds in a guardianship account. Very soon thereafter, Othar Harp died, his son was appointed executor, and the funds were moved into an estate account.

Notice to creditors regarding Mr. Harp's estate was placed in the local newspaper, though appellant did not receive personal notice by mail. However, appellant and Mr. Harp's son communicated about Mr. Harp's death because the son contacted appellant about bank account documents. Approximately one year and one month after Mr. Harp's death, appellant filed a claim against the estate alleging wrongful withdrawal of the joint account funds and asserting her claim was timely because she had not received proper notice as a creditor of the estate. Appellant concurrently filed suit in circuit court against the bank alleging breach of contract and damages in the amount of the withdrawal for allowing the son, as guardian, to withdraw the funds and close the account. The cases were consolidated in chancery court.

It was stipulated that appellant did not realize she had any

claim against the estate of Mr. Harp until after she consulted an attorney, long after her ninety days to file a claim had expired. It was further stipulated that the money in the account was solely Mr. Harp's, and the money therefrom was used only to pay his bills. The sole claim appellant made to the funds were those rights conferred by the signature card. Appellant had never attempted to withdraw funds from the account and never claimed to have deposited any funds in the account. In fact, appellant testified that Mr. Harp's son came to her house not long after Mr. Harp had been put in a nursing home and told her he was taking care of his father's affairs. She gave the son the papers she had with regard to the checking account. Appellant admitted that she paid bills for Mr. Harp with no expectation of payment for those services. She never told the son that she claimed title to the funds in the account. Her claim was based on the argument that had Mr. Harp died with her as joint owner, she would have been entitled to the entire account funds, which was not raised until long after any time to file a claim against the estate had passed.

After all parties moved for summary judgment, the chancellor determined that no breach of contract occurred because the lawful guardian could rightfully withdraw the funds and close the account; that appellant's claim against the estate was untimely because she was not a reasonably ascertainable creditor of the estate nor even a creditor entitled to notice under Arkansas law; and that the estate's negligence claim against the bank was moot. This appeal followed.

Appellant first argues that the bank wrongfully allowed the guardian to withdraw the account funds and place them in a guardianship account. On the facts of this case, we disagree. It is clear that the right to withdraw funds in a joint account is equal to both depositors, and a bank may rightfully pay all the funds in the account to either owner. Ark. Code Ann. § 23-32-1005 (Repl. 1994); *Hogan* v. *Hogan*, 313 Ark. 374, 855 S.W.2d 905 (1993); *O'Flarity* v. *O'Flarity*, 42 Ark. App. 5, 852 S.W.2d 150 (1993). However, each owner's right to the funds may depend upon an agreement between them as to their ownership rights, *Hogan*, 313 Ark. 374, 855 S.W.2d 905, and here no question of ownership ever arose.

In the instant case, appellant did not believe a gift

had been made to her, appellant never attempted to withdraw funds for herself, and appellant knew the entire fund originated with Mr. Harp. No question as to ownership has been raised other than the rights conferred to survive to ownership. A guardian has certain duties under Arkansas law, one of which is to exercise due care to protect and preserve the ward's property. Ark. Code Ann. § 28-65-301 (1987). Pursuant to the letters of guardianship as presented to the bank, the son exercised his powers to protect and preserve the ward's personal property. Under these facts, the bank could rightfully allow withdrawal under the letters of guardianship and under the contract with the parties.

Appellant next argues that her claim against the estate, filed long after the ninety days after publication had expired, was timely. We disagree pursuant to the clear reasoning of *Estate of Spears*, 314 Ark. 54, 858 S.W.2d 93 (1993). Appellant argues that she was a "known or reasonably ascertainable creditor," Ark. Code Ann. § 28-40-111(a)(1), (a)(4) (Supp. 1991), and as such should have had two years from publication of notice to creditors in which to file a claim since she did not receive actual notice. Ark. Code Ann. § 28-50-101(h) (Supp. 1991).

This is incorrect since we said in *Spears* that a creditor of an estate must be subject to identification during the three month statute of nonclaim, Ark. Code Ann. § 28-50-101(a) (Supp. 1991). If this were not the case, then all matters of estate would be left open for two years. Certainly this was not the intent of the legislature, and we explained this in *Spears*. Appellant was not a creditor of the estate, reasonably ascertainable or otherwise, and she admitted she did not know she had a potential claim against the estate until well after the ninety days in which to make a claim had expired. Furthermore, appellant was admittedly aware of the son's actions as she and Mr. Harp's son communicated about the account after Mr. Harp's death. Appellant's claim against the estate was rightfully deemed untimely.

For the foregoing reasons, the chancellor's decision is affirmed.

HOLT, C.J., DUDLEY and NEWBERN, JJ., concur.

DAVID NEWBERN, Justice, concurring. The Court's opinion reaches the correct result because the claim against the estate

was untimely and the Bank was not shown to have been at fault.

The problem with the opinion is that it does not address a principal contention in this appeal, *i.e.*, that Othar Harp's guardian had no authority to remove the funds from the joint account so as to frustrate Ms. Brasel's right of survivorship. The opinion simply says the guardian was gathering in the assets of Othar Harp's estate, as if there were no issue whether he had the authority to, in effect, revoke the survivorship rights which Othar Harp had created in Ms. Brasel. The question is whether a guardian may, with no showing of a need on the part of the ward, effectively revoke decisions made by the ward before the ward became incompetent.

A guardian of the estate of an incompetent person does not become the alter ego of the ward and has no authority to change an act by which the ward exercised personal discretion before becoming incompetent. *Howard* v. *Imes*, 90 So. 2d 818 (Ala. 1956); *Drozinski* v. *Straub*, 383 So. 2d 301 (Fla. 2nd App. 1980); *Rozycke* v. *Sroka*, 279 N.E.2d 155 (Ill. App. 1972).

The foregoing rule, which this Court has not had an occasion to address, appears to be a general rule of guardianship law which operates in the absence of a statute to the contrary or fraud. *Cf. Estate of Thompson* v. *Stroud*, 539 S.W.2d 650 (Mo. App. 1976)(statute specifically permitted withdrawal of joint account funds by guardian); *Cape Coral Bank* v. *Kinney*, 321 So. 2d 597 (Fla. 2nd App. 1975)(allegation of fraud perpetrated by joint tenant against incompetent person).

The opinion in the case we decide today could be, but should not be, interpreted as allowing a guardian to change decisions made by the ward before the ward became incompetent under the guise of gathering in the assets of the ward's estate. That could produce a patently unfair result, especially in a situation where the guardian is an heir or beneficiary of the ward's estate. It could produce a result which is directly contrary to the legitimate intention of the ward reached at a time when the ward had undoubted capacity to act.

Had there been a timely claim against the estate, perhaps joined with a claim against the guardian, the result might well have been different. In this case we should do no more than point

out that no claim is made against the guardian, the claim against the estate was untimely, and the claim against the Bank lacked merit.

HOLT, C.J., and DUDLEY, J. join in this concurrence.