Sue MONK *v.* Judy GRIFFIN

CA 04-419                                                213 S.W.3d 651

Court of Appeals of Arkansas
Opinion delivered September 21, 2005

*Keith N. Wood*, for appellant.

*William Randal Wright*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Sue Monk, appeals from the circuit court's order approving a final accounting, final distribution, and payment of fees in the estate of Ruby C. Griffin.[1] On appeal, appellant argues that appellee, Judy Griffin, who

---

[1] This case began as a guardianship of Ruby Griffin's estate in which appellee was appointed guardian of the estate. Following Ruby Griffin's death, appellee and appellant were appointed co-executrixes of the estate, and appellee, without filing an inventory or

was Ruby Griffin's guardian and later the co-executrix of Ruby Griffin's estate, improperly spent funds from a certificate of deposit held jointly by appellant and Ruby Griffin that was cashed but not spent by appellee during the eleven days preceding Ruby Griffin's death. Further, appellant contends that appellee, in her capacities as guardian and as co-executrix, improperly spent funds from the estates, including expenditures on the farm where appellee resided and that was devised to her through Ruby Griffin's will. Finally, appellant challenges the award of attorney fees. We reverse and remand.

Only one hearing was held and that was on appellee's petition for approval of the "First and Final Accounting" in the decedent's estate administration, which was filed January 13, 2003, just short of two years after Ruby Griffin's death. Appellee testified that she and appellant were sisters and, as provided by their mother's will, their mother's sole beneficiaries. According to appellee, her mother owned a cattle farm and the residence — neither of which were included in the accounting — where appellee had resided with her mother for fifty years. Her mother had a stroke on June 24, 1998, and she was placed in a nursing home, never returning to the residence. Appellee was appointed guardian in August of 1999, and according to appellee, she assisted her mother in her care two to three times a week.

Appellee discussed a number of payments she made during the guardianship. She paid $1394.29 to Still's Auto Service for repairs on a car and a farm truck owned by her and her mother, which she testified were proper expenditures for the maintenance of her mother's property during the time she was acting as guardian. She also testified that while acting as her mother's guardian, she paid $3593.11 for the management and maintenance of her mother's property. These expenditures included items such as funds for the repair of a water pump; water, gas, and electric utility payments; and payments to Terminix, an appliance store, and a plumbing business. She testified that these expenses were proper for the maintenance of the property while her mother was in the nursing home. She further stated that she was "spending my money mostly, when it played out I didn't see anything wrong with spending some of that money and besides she would expect

---

obtaining an approval of any accounting in the guardianship case, probated the estate as part of the same case. Appellee filed three accountings, two in the guardianship and one in the decedent's estate.

me to spend some of the money on the utilities because I was spending money for everything else out of there out of my check." She stated that her mother was not living there but that it was her mother's house. She also admitted that she wrote herself several checks. She testified that "[t]here was things that I needed out there to work with and my mother did not care, she already knew what I did. I didn't take money from her. Every once in a while when I took money she knew about it." She testified that she did not know whether her mother benefitted from this but that the farm benefitted.

Appellee also testified that on February 13, 2001, she was maintaining a banking account numbered 758558 for the payment of her mother's nursing-home expenses. On that day, she transferred to that account funds from a certificate of deposit, numbered 16822, in the amount of $19,960.53, that was held jointly by her mother and appellant with rights of survivorship. She testified that she did so because there were not enough funds in the bank account to pay for the next month of nursing-home charges. She acknowledged that there were other certificates of deposit that she could have placed in the account, but that they were of larger amounts, and that the certificate of deposit she used would have matured within a month. Her mother, however, died on February 24, 2001, and she did not spend any of the funds from the certificate of deposit prior to her mother's death.

In March 2001, following her mother's death, appellee opened another account numbered 768154, which she described as the farm account. According to appellee's first and final accounting, she transferred $20,016.15 into the new account. The transfer included the funds that appellee obtained when she cashed certificate of deposit 16822. From March 2001 to August 27, 2002, appellee deposited a total of $40,129.32 into that account. During that time, she spent all the money in that account except for $3102.33.

She testified that she put the funds from the certificate of deposit into that account "to take care of things on the farm." She stated that she "had one check coming in that was mine. I had to pay my bills and those bills too." She acknowledged that her mother's will provided that she would inherit the farm, the cows, and the farm implements. As for the certificate of deposit, she stated that it was her mother's money and she spent it on her mother for what she needed and that appellant was entitled to the remainder. She further stated that after her mother died, she

continued to expend funds on the farm, just as she did prior to her mother's death. Finally, she acknowledged that all farm equipment and implements belonged to her and that everything spent on them since her mother's death was for appellee's benefit only.

In its ruling, the court stated that appellee did not have to return any funds because the funds were paid on the farm, which the court concluded remained estate property. The court also stated that the guardian and personal representative had an obligation to maintain the estate property and spend money on the farm. The court further found that the attorney fees were fair for the work done on behalf of the estate. In an order filed December 19, 2003, the court granted appellee's petition for approval of the accounting and distribution of the estate and for payment of attorney fees.

On appeal, appellant argues that the court erred in ruling that, following their mother's death, appellee properly spent the funds from the certificate of deposit. As we have noted, the certificate was held jointly by appellant and her mother with rights of survivorship. Eleven days before her mother's death, appellee withdrew the funds from the certificate and deposited the funds into a separate account for payment of nursing-home expenses. The funds were not spent prior to her mother's death; instead they were transferred into a new account and spent after her death on maintenance of the farm.

█ Even though one has a right to withdraw funds from a joint bank account, a joint tenant may not, by withdrawing funds in a joint tenancy, acquire ownership to the exclusion of the other joint tenant. *Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995). When one withdraws in excess of his moiety, he is liable to the other joint tenant for the excess withdrawn. *Id.*; *Hogan v. Hogan*, 313 Ark. 374, 855 S.W.2d 905 (1993). We are mindful that appellee, as guardian of her mother's estate, could withdraw the funds from the certificate of deposit to pay for her mother's nursing-home expenses. *See Brasel v. Estate of Harp*, 317 Ark. 379, 877 S.W.2d 923 (1994). But here, her mother died, and the funds were not used for the purpose of paying the nursing-home expenses. Rather, appellee placed the funds in a farm account to spend on the farm, which was devised to appellee in her mother's will.

As noted by Justice Newbern's concurrence in *Brasel* in his examination of cases from other states, a "guardian of the estate of

an incompetent person does not become the alter ego of the ward and has no authority to change an act by which the ward exercised personal discretion before becoming incompetent." *Brasel*, 317 Ark. at 383, 877 S.W.2d at 926. Here, appellant was entitled to her moiety in the funds upon her mother's death, which would have been the entire sum, as it was not spent on Ruby Griffin. Otherwise, appellee as guardian would have effectively changed decisions made by the parties' mother before she became incompetent, under the guise of gathering in the assets of their mother's estate.

Appellee argues that the case of *South v. Smith*, 326 Ark. 774, 934 S.W.2d 503 (1997), is similar to this case. That case, however, did not concern, as here, withdrawal of funds in excess of a joint tenant's moiety. Rather, in *South*, the withdrawal of funds by the joint tenant was consistent with the joint tenant's survivorship interest in the account. There, an estate sought funds from a certificate of deposit held by the deceased and a joint tenant. The court noted that upon the decedent's death, the funds properly went to the joint tenant and that even if the joint tenant withdrew the funds before the decedent's death, it did not terminate the joint tenant's survivorship right in the property. The court concluded that "[j]oint accounts are often used as substitutes for testamentary disposition, and people who establish such account must be able to know with certainty that the courts will follow their desired disposition of their property." *South*, 326 Ark. at 784, 934 S.W.2d at 508. We observe that *South* instead supports our conclusion that appellant's survivorship right in the funds from the certificate of deposit remained even after the funds were withdrawn. We reverse and remand on this point.

■ Appellant also argues that, following their mother's death, appellee improperly spent funds on the farm. Appellee argues that Ark. Code Ann. § 28-49-101(b)(2) (Repl. 2004) permits a personal representative to preserve and maintain real property, and therefore, she was entitled to spend the funds on maintaining the farm.[2] Title to real property, however, vests in the

---

[2] Subsection (b) provides in part as follows:

(b)(1) Real property shall be an asset in the hands of the personal representative when so directed by the will, if any, or when the court finds that the real property should be sold, mortgaged, leased, or exchanged for any purpose enumerated in § 28-51-103, irrespective of whether any personal property of the estate, other than money, is available for such a purpose.

devisee immediately on the testator's death, and not at the probate of the will, if the will does not postpone the vesting of title. *Blair v. Bradley*, 238 Ark. 191, 379 S.W.2d 5 (1964). The statute referred to by appellee provides that "[r]eal property shall be an asset in the hands of the personal representative when so directed by the will," or "when the court finds that the real property should be sold, mortgaged, leased, or exchanged" for various purposes, none of which are relevant here. Ark. Code Ann. § 28-49-101(b)(1) (Repl. 2004). Here, there is no indication in the will that title was not to vest immediately. Furthermore, there was no showing, as required by statutory provision cited by appellee, that it was "necessary" that appellee expend funds on the farm "for the preservation of the property, for protecting the rights and interests of persons having interests therein, or for the benefit of the estate." Ark. Code Ann. § 28-49-101(b)(2) (Repl. 2004). And finally, we note that no real property, farm equipment, or farm animals, were listed as an asset of the estate, suggesting that appellee did not consider them property of the estate. Accordingly, we reverse the circuit court's approval of any expenditures on the farm made after the death of Ruby Griffin. Thus, in addition to appellee paying to appellant funds received from the certificate of deposit jointly held by appellant and Ruby Griffin, appellee shall also pay a sum equal to one-half of all other funds expended from or remaining in the farm account.

▌ Appellant further contends that appellee, in her capacity as guardian, improperly used funds during the guardianship and while administering the estate. On the approval of funds spent during the guardianship, the court found that funds were paid out for maintenance on the farm. This finding, however, does not address the ultimate issue of whether the payments were proper.

---

(2) When real property has become an asset in the hands of the personal representative as provided in this section or when and as long as the court finds it necessary for the preservation of the property, for protecting the rights and interests of persons having interests therein, or for the benefit of the estate, the personal representative may collect rents and earnings from the property, pay taxes and special assessments thereon, make necessary repairs thereon, maintain the property in tenantable condition, preserve it against deterioration, protect it by insurance, and maintain or defend an action for the possession of the property, or to determine or protect the title until the real property is sold, mortgaged, leased, exchanged, or is delivered to the distributees thereof, or until the estate is settled.

Ark. Code Ann. § 28-49-101(b)(2) (Repl. 2004).

The duties of a guardian of an estate include the duty to "exercise due care to protect and preserve it." Ark. Code Ann. § 28-65-301(b)(1)(A) (Repl. 2004). Thus, the ultimate issue is whether appellee, in fulfilling her duties as guardian of the estate, exercised due care to protect and preserve the estate. *See Robinson v. Hammons*, 228 Ark. 329, 307 S.W.2d 857 (1957) (reversing the probate court's allowance of credits to guardian where the guardian failed to meet his burden of showing that he exercised due care to protect and preserve the estate of his ward).

While payments made for maintenance on the farm may be relevant to the question of whether appellee met her statutory obligations as guardian, it does not answer the question at bar. For instance, payments made for maintenance on the farm could have been made, not to preserve and protect the estate, but to enable appellee to live on the farm while her mother remained in the nursing home. We remand for further findings on expenses paid during the guardianship only. *See Robinson v. Merritt*, 229 Ark. 204, 314 S.W.2d 214 (1958) (clarifying its decision in *Robinson v. Hammons* as permitting the probate court to take further proof on the credits claimed by the guardian).

■ Finally, we reverse and remand for reconsideration the circuit court's award of $7500 in attorney fees. The court awarded a lump sum and did not differentiate between the guardianship and the probate of the estate. Furthermore, in awarding attorney fees for the guardianship pursuant to Ark. Code Ann. § 28-65-319 (Repl. 2004), the circuit court did not consider the factors set forth in *Bailey v. Rahe*, 355 Ark. 560, 142 S.W.3d 634 (2004), and that we discussed in *Scott v. Esate of Prendergast*, 90 Ark. App. 66, 204 S.W.3d 110 (2005). As for the award of attorney fees pursuant to Ark. Code Ann. § 28-48-108(d) (Supp. 2005), we are unable to discern whether the fee was "based on the total market value of the real and personal property reportable to the circuit court" or whether it was based on some other measure. We do note that certificates of deposit were inexplicably cashed and placed in a trust and then listed as assets. For purposes of determining attorney fees, which are based in part on the size of the estate, assets listed in the estate should be assets that are properly estate assets. Thus, we remand for reconsideration of this issue as well.

Reversed and remanded.

NEAL and VAUGHT, JJ., agree.